**Patricia L. HINES, Appellant
(Plaintiff Below),**

v.

**Richard W. BEHRENS and the Exchange
Bank of Warren, Appellees
(Defendants Below),**

v.

**EXCHANGE BANK, Third-Party
Plaintiff,**

v.

**Richard W. BEHRENS, Phyllis Irene
Behrens and Patricia L. Hines,
Third-Party Defendants.**

**No. 2–1179A344.**

Court of Appeals of Indiana,
Second District.

June 23, 1981.

Richard R. Cook, Daytona Beach, Fla., for appellant.

Dennis L. McNeely, Gordon, Glenn, Miller, Bendall & Branham, Huntington, for appellee Exchange Bank.

BUCHANAN, Chief Judge (writing by designation).

## CASE SUMMARY

Plaintiff-appellant Patricia L. Hines (Hines) appeals from denial of her quiet title action brought against the Exchange Bank of Warren (Bank) and the grant of the Bank's counterclaim against her determining that the Bank's junior lien take precedence over her judgment lien, and awarding, on that basis, foreclosure to the Bank.

We reverse.

## FACTS

This case was tried to the bench on stipulated facts. Those stipulations revealed the following:

On March 13, 1978, Hines filed a complaint against Richard W. Behrens (Behrens) and the Bank requesting that the Huntington Circuit Court quiet title to certain real estate in her which she had previously acquired from Behrens through execution sale. That execution sale arose from a judgment in a divorce action by Hines (then Behrens) against Behrens, her exhusband, in which she obtained a judgment of $8,663.64 against him on March 22, 1974.

Behrens received title to the real estate in his own name by a deed dated July 12, 1973, and recorded August 2, 1973. He mortgaged the real estate to the Bank to secure a debt on a promissory note for $5100. That mortgage was dated July 27, and was recorded August 2, 1973. On March 22, 1974, the judgment arising out of the previous lawsuit between Hines and Behrens which was in favor of Hines in the amount of $8,663.64 was certified to the Huntington Circuit Court. On that date, the 1973 mortgage had an outstanding principal balance of $4,865.01 plus accrued in-

terest of $7.23. An execution was delivered to Behrens on May 11, 1974.[1]

More than one year later, on June 14, 1975, Behrens conveyed the real estate to himself and his second wife, Phyllis (Phyllis). This transfer was recorded June 16, 1975.[2]

On March 12, 1976, the Bank *released* its original mortgage, and recorded that release on March 18 of that year. A new mortgage interest in the same real estate was given by Behrens and Phyllis to the Bank in the amount of $10,100. That new mortgage was dated March 12, 1976, and recorded March 18, 1976.

On July 11, 1977, the Huntington Circuit Court clerk again issued an execution against Behrens, but it was never served upon him. Execution sale of the property was held on September 22, 1977. The Bank was never served with a copy of any execution form and was never in any way joined as a party or otherwise with reference to the sheriff's sale of the property. The sheriff's sale was published in the Huntington Herald Press on August 17, 24 and 31, 1977. Further notice of the sale was posted in Warren at three locations. The Bank had actual notice that execution process had been commenced and that sale was imminent because it had received letters dated July 12, and August 17, 1977, from Hines' attorney.

At the date of sale, Hines' judgment against Behrens totalled $12,360.02 including interest and costs. At the sale Hines bid in $11,254.54 for the property and was issued a sheriff's deed.

As of May 9, 1978, the Bank's mortgage amounted to $9,317.74 principal and $831.70 interest.

The trial court denied Hines' petition to quiet title, and granted the Bank's foreclosure action against the property, foreclosed any equity of redemption in Behrens and Phyllis, and ordered that any proceeds from the property remaining after satisfaction of the Bank's mortgage be paid to Hines.

Hines appeals.

## ISSUE

The sole issue presented for review is:

Did the trial court commit reversible error in holding that the Bank's mortgage was a valid lien against the real estate following the execution sale?

## DECISION

*PARTIES' CONTENTIONS*—Hines argues that the Bank's lien was extinguished by execution sale, basing this on the fact that despite having notice by publication in the manner required by statute, as well as actual notice from her attorney, the Bank failed to appear and bid at the sale.

Bank responds that the failure to be made a party as a junior lien holder [3] means that the execution sale had no effect whatsoever on its interest, and that although Hines is the owner of the real estate because she bid in, she owns it subject to the Bank's mortgage, which is now the senior lien on the property because Hines' judgment lien was extinguished by her purchase at the sale.

Both parties, in support of their arguments cite to statutes which are seemingly in conflict.

1. A guardian ad litem was appointed for Behrens, and that guardian was present during the execution sale. Behrens allowed entry of default judgments against him both by Hines in her quiet title action and by the bank in its counterclaim for foreclosure. He is not a party to this appeal.

2. Phyllis, who apparently subsequently divorced Behrens and whose current married name was Phyllis Irene Neidlinger, quit-claimed her interest in the real estate to Hines on January

13, 1978. She is therefore not a party to this appeal.

3. In its brief, the Bank states that it assumes for the sake of argument, but does not admit, that the second mortgage executed by Behrens and Phyllis is a lien junior to Hines' judgment lien. Given the fact the trial court made an express finding of fact that the second mortgage was a junior lien (R. at 68), and that such finding was supported by evidence in the stipulations, we must accept it. T.R. 52(A).

*CONCLUSION*—The trial court erred in holding that the Bank retained a valid lien following the execution sale.

The crux of this appeal is the notice that must be given by a senior lienholder (Hines) to a junior lienholder (the Bank) of an execution sale judicially foreclosing the senior lienholder's judgment lien.

Foreclosure of liens is largely a statutory matter. Trial Rule 69 in pertinent part refers us to statutory authority as to the method of foreclosure of liens on real estate:

(A) Execution *sales.* Process to enforce a judgment or a decree for the payment of money shall be by writ of execution . . .

[T]he sale of real estate *shall be conducted under the same rules and some procedures applicable to foreclosures of mortgages,* including subdivision (C) of this rule . . .

(C) *Foreclosure of liens upon real estate.* Unless otherwise ordered by the court, *judicial foreclosure of all liens upon real estate shall be conducted under the same rules and the same procedures applicable to foreclosure of mortgages upon real estate,* including without limitation redemption rights, manner and notice of *sale,* appointment of receiver, execution of deed to purchaser and without valuation and appraisement.

(Emphasis added). T.R. 69 is a "road map," directing us to the applicable statutes which are three in number:

I.C. 32–8–16–1. Stay of execution; *sale* of premises.

Sec. 1. In any proceeding for the foreclosure of any mortgage executed on real estate . . . upon the filing of a praecipe therefore by any judgment creditor in said proceeding a copy of the judgment and decree shall be issued and certifie[d] by the clerk under the seal of the court, to the sheriff, who shall thereupon proceed to sell the mortgaged premises . . . at public auction at the office of the sheriff of the county in which said real estate is situated, *by advertising the same by publication once each week for three (3) successive weeks.*

(Emphasis supplied). Hereinafter referred to as the Mortgage Foreclosure statute.

32–8–18–1 Necessary parties defendants

Sec. 1. Hereafter, in any *suit instituted* in the courts of the state of Indiana *to foreclose any mortgage* or other lien on real estate situate in the state of Indiana, and in such proceeding or suit, *it shall be necessary to make parties any* person, persons, corporation or copartnership *as defendants* in such suit or proceedings, it shall be sufficient to make such person, persons, corporation or copartnership parties defendants *in and by the name in which their lien or claim appears on the public records* of the county wherein said suit or proceeding is commenced, *and service of summons or notice by publication to such person, persons, corporation or copartnership,* or any one of the members of the copartnership, or on any officer of a corporation, *shall be sufficient* to bind said corporation or copartnership.

(Emphasis supplied). Hereinafter referred to as the Necessary Parties statute.

34–1–36–1 [2–3601]. Levy and offer to sell

When an execution against the property of any person is issued to the sheriff, *he shall serve said execution upon the defendant or defendants in said county* . . . .

(Emphasis supplied). Hereinafter referred to as the Service of Execution statute.

The precise question of notice to be given a lienholder of execution sale has not been addressed in Indiana, although we do find guidance from analogous cases.

*Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, cert. denied 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974) refers to the vendor's right to foreclose his lien on land being sold "on contract" as being comprehended by T.R. 69(C); and in discussing the "procedures attendant to the foreclosure sale," *Id.* 301 N.E.2d at 648–49, the opinion refers to the Foreclosure Statute (I.C. 32–8–16–1) as "[t]he basic foreclosure statute", *Id.* at 648. A considerable number

of other cases dealing with various aspects of mortgage foreclosure rely exclusively on the Foreclosure Statute as setting forth the recognized method of foreclosure. *See Morris v. Weigle* (1978), Ind. 383 N.E.2d 341; *Ogle v. Wright* (1977), 172 Ind.App. 309, 360 N.E.2d 240; *Cherokee Drilling Corp. v. Gibson County Bank* (1975), 166 Ind.App. 457, 336 N.E.2d 685; *Indiana Suburban Sewers, Inc. v. Hanson* (1975), 166 Ind.App. 165, 334 N.E.2d 720; *Donaldson v. Sellmer* (1975), 166 Ind.App. 60, 333 N.E.2d 862.

■ Without benefit of authority the Bank points to the Necessary Parties statute (I.C. 32–8–18–1) as requiring it to have been made a party to the "foreclosure or execution proceeding." This statute, giving its terms their plain, ordinary and usual meaning,[4] obviously refers to "any suit *instituted ... to foreclose any mortgage or other lien ...*" Such was not the posture of events here as Hines' money judgment arose from a divorce action. She never instituted a suit to foreclose a lien, but merely sought execution and sale to satisfy her money judgment in the normal way. Consequently the Necessary Parties statute is not applicable.

■ The Bank urges upon us the proposition that the Service of Execution statute (I.C. 34–1–36–I) requires personal notice to it as a lienholder because that statute states "[t]he sheriff ... shall serve said execution upon the defendant *or defendants*." The presence of the plural in this statute (the Bank argues) necessarily includes parties with interests in property such as lienholders. Again, the plain, ordinary and usual meaning of the language used forces the conclusion that the persons against whose property the execution is issued who are referred to are the owner or owners, not lienholders. The Bank's interpretation would create a conflict between the Foreclosure Statute, which we have already established as being the statute applying to mortgage foreclosures, and the Service of Execution statute. Statutes are interpreted *in pari materia* so as to harmonize and give effect to each other. *Schrenker v. Clifford* (1979), Ind., 387 N.E.2d 59; *Harvey v. Board of Commissioners of Wabash County* (1981), Ind.App., 416 N.E.2d 1296.

■ In sum, we conclude that the Foreclosure Statute is the statute applicable to mortgage foreclosures, and that the Service of Execution statute can be interpreted to harmonize with it.

■ As notice was given the Bank by publication under the terms of the Foreclosure Statute, it follows the Bank received adequate notice as required by the governing statute. Thus, the execution sale following publication of notice extinguished the junior lien of the Bank. *See, Adair v. Mergentheim* (1888), 114 Ind. 303, 16 N.E. 603; *Woodworth v. Zimmerman* (1883), 92 Ind. 349; *Anderson v. Anderson* (1942), 110 Ind.App. 577, 39 N.E.2d 806.

This outcome is consistent with our prior holding as to the effect of publication of notice of a tax sale. In *First Savings and Loan Association of Central Indiana v. Furnish* (1977), Ind.App., 367 N.E.2d 596, we held that general notice of a tax sale, by publication pursuant to statute, was sufficient to extinguish the interest of a lienholder in real estate. In *Furnish*, we considered and rejected the lienholder's arguments that actual notice of a tax sale is required for parties other than owners of real estate. *Id.* at 601.

We find the following language from *Furnish* to be persuasive:

It is understandable why actual notice has not been extended to mortgagees. Most mortgagees are in the business of lending money, and as professional money lenders prudence requires them to be aware of conditions involving their collateral. Normally they can be expected to protect their interest by keeping records of the mortgagor's discharge of his obligations, such as payments of taxes, insurance, principal and interest installments.

---

**4.** I.C. 1–1–4–1 Statutes, How Construed—The construction of all statutes of this state shall be by the following rules, ... First. Words and phrases shall be taken in their plain, or ordinary and usual, sense.

Also, we are aware that there is a vintage Indiana case, *Baldwin v. Moroney* (1910), 173 Ind. 574, 91 N.E. 3, which specifically, categorizes a mortgagee as a "non-owner" unless he is in possession of the real estate.

*Id.*

While our decision is grounded on the conclusion that the Bank received legal notice under the provisions of the Foreclosure Statute, the Bank in this case, unlike the situation in *Furnish*, had actual notice of the impending execution sale. It had received letters regarding the imminent sale from Hines' attorney. It was hardly prejudiced.

Accordingly, the trial court committed reversible error in allowing the Bank to prevail over Hines, and in denying the quiet title relief sought by Hines. The judgment is reversed and remanded to the trial with the direction that judgment be entered in favor of Hines.

REVERSED.

CHIPMAN and YOUNG, JJ., concur.