WESTERN TRANSPORTATION COMPANY, Plaintiff-Appellant, Plaintiff-Appellee,

v.

E. I. DU PONT DE NEMOURS AND COMPANY, Defendant-Appellee, Defendant-Appellant.

Nos. 82–1089, 82–1190.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1982.

Decided July 12, 1982.

Steven C. Weiss, Abraham A. Diamond, Chicago, Ill., for plaintiff-appellant, plaintiff-appellee.

William E. Kelly, Chicago, Ill., for defendant-appellee, defendant-appellant.

Before WOOD and POSNER, Circuit Judges, and CAMPBELL, Senior District Judge.*

POSNER, Circuit Judge.

This is another case involving the assiduous efforts of Western Transportation Company, a bankrupt trucker, belatedly to collect from its shippers undercharges resulting from its having failed to charge the correct rates at the time of shipment. See *Western Transp. Co. v. Wilson & Co.,* 682 F.2d 1227 (7th Cir.), decided this day; *Western Transp. Co. v. Webster City Iron & Metal Co.,* 657 F.2d 116 (7th Cir. 1981). For relevant background, and discussion of the applicable legal principles, see the *Wilson & Co.* opinion.

The present case involves "piggyback" service, wherein freight is loaded into a truck's trailer at the shipper's premises, the trailer is then hauled by truck to a railroad

---

* Of the Northern District of Illinois.

terminal and there loaded on to a railroad flatcar, and after its rail journey the trailer is unloaded and hauled (again by truck) to the consignee's premises. The movements in question went under a tariff applicable to freight in "trailers furnished by the shipper, the rail carrier, the water carrier or its affiliates." Western's normal practice was to obtain trailers from railroads in Chicago, haul the trailers by truck to Du Pont's plant in Iowa, load them there, and then haul the loaded trailers back to Chicago and deliver them to the railroads for the rail part of the journey. These movements complied with the tariff provision quoted above but between 1977 and 1979 Western decided that too many of its own trailers were near Du Pont's plant and it asked Du Pont whether it would be all right to substitute those trailers for the trailers it had been getting from the railroads. Western assured Du Pont that the substitution would involve no extra expense to Du Pont; Du Pont consented to the substitution; and now Western is suing Du Pont for the difference between what it actually charged under the tariff quoted above and what it would have charged under the tariff—containing a higher rate—that is applicable if the trailers are furnished by the trucker rather than by the shipper or the rail carrier.

The district court agreed that Western was entitled to collect the additional charges and awarded judgment in its favor of $27,000, from which Du Pont appeals. The district court rejected an unrelated claim of Western and Western has not appealed from that part of the judgment. After the judgment was entered Western made two motions, one purportedly under Rule 59(e), the other under Rule 60(b), of the Federal Rules of Civil Procedure, to have the judgment increased. The district judge denied these motions and Western appeals from those denials.

■■■ We can dispose of Du Pont's appeal quickly in light of the opinion in *Wilson & Co., supra.* If a tariff is unambiguous it must be enforced according to its terms, regardless of the equities, which here as in *Wilson & Co.* strongly favor the shipper. We find no ambiguity in this tariff. It fixes a lower rate for piggyback service when the trucker does not furnish the trailers itself. Here the trucker did furnish the trailers itself. Du Pont argues that really it furnished the trailers because by consenting to Western's proposal it "arranged" for Western's trailers to be used. But this construction nullifies the tariff provision. Counsel for Du Pont was unable at oral argument to suggest a case where the furnishing of trailers by the motor carrier could not be construed as a furnishing by the shipper if we accepted Du Pont's construction. We cannot think of such a case either. We agree with counsel that if Western had leased its trailers to Du Pont and Du Pont had then provided Western with those trailers to use in its piggyback service for Du Pont, Du Pont would be the furnisher. But a lease would have given Du Pont a possessory interest in the trailers—enough so they could be regarded as its trailers for purposes of the tariff. It had no interest in the trailers in this case. They were Western's pure and simple.

In *Wilson & Co.* there was a suggestion that the tariff provision in issue was unreasonable, and we remanded the case to the district court to give the shipper an opportunity to ask the Interstate Commerce Commission to rule on the question. There is no similar suggestion in this case, and the district court's judgment must be affirmed.

We turn to Western's appeal from the district court's refusal to increase the size of the judgment—an appeal rich in irony. In defending the judgment for the undercharges Western takes its stand foursquare on technicality; it does not argue that the judgment is equitable. But in contesting the district court's refusal to increase the judgment Western argues that its failure to comply with the technical requirements of the Federal Rules of Civil Procedure should not deny it the substantial justice that it says is its due.

Rule 59(e) provides that "a motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." On November 30, 1981, the

1236

tenth day after the entry of the judgment in this case, Western filed a motion with the district court captioned "Motion for Reconsideration." The motion states simply that pursuant to Rule 59(e) Western "moves the Court to reconsider those portions of the above captioned case upon which the Court rendered summary judgment in favor of defendant and against plaintiff," and that "in support of its motion, plaintiff will file a short Memorandum of Law on or before December 11, 1981." In that memorandum, which was indeed filed on December 11, Western states that it "has decided not to proceed with its Motion for Reconsideration," but that "it has come to Western's attention" that it made a clerical error in computing the amount of the undercharges, and it therefore "moves to amend the decision of the Court to include $4430.75 in Western's favor plus interest."

▮▮▮▮ The November 30 motion was not a Rule 59(e) motion. It asked not that the judgment be altered or amended but that the district court reexamine its dismissal of some of Western's claims. It was, as the caption stated, a motion for reconsideration, erroneously described in the body of the motion as a Rule 59(e) motion. Nor could it plausibly be construed as a motion for an extension of time in which to file a motion to alter or amend the judgment; and even if it were so construed, that would not help Western since no extension of time was in fact granted by the court. The December 11 submission, though captioned a memorandum of law, was in fact a motion to amend the judgment, but it was untimely.

On December 16 Western filed a motion under Rule 60(b) to add $23,000 to the judgment. This rule provides, so far as is relevant here, that "on motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect .... The motion shall be made within a reasonable time, and ... not more than one year after the judgment ... was entered ...." This rule is usually invoked by losing defendants rather than, as in this case,

a winning plaintiff; but we assume it can be used, in an appropriate case, by such a one. See *Arkla Exploration Co. v. Boren*, 411 F.2d 879, 883–84 (8th Cir. 1969).

The complaint was filed on July 29, 1980. It was based on an audit of Western invoices conducted by a consultant that it had hired to find undercharges. His $23,000 error which Western's Rule 60(b) motion sought to correct came from a misreading of a tariff and is sought to be excused on the ground that tariffs are complicated things to read and understand. The consultant did not discover his error until after judgment was entered on November 20, 1981, which was almost 16 months after the complaint had been filed; Western's attorneys inexplicably had failed to check the consultant's damage calculations.

▮▮▮▮ In these circumstances it was well within the district court's discretion to decline to increase the judgment. In fact it would probably have been an abuse of his discretion to have granted the motion. A negligent mistake, that is one evincing a lack of due care, is not a proper ground for relief under Rule 60(b). *Bershad v. McDonough*, 469 F.2d 1333, 1337 (7th Cir. 1972). What is due care depends on the cost of an increment of care in relation to its expected benefits. If Western's consultant or attorneys had spent just a few more hours checking their computations before the complaint was filed, or at least before judgment was entered, rather than waiting till after judgment was entered to do so, they would have been able to increase the judgment by more than $27,000 (adding together the $23,000 and the $4000 errors). It would have cost no more to check earlier than later. Western's mistake was careless and bars relief under Rule 60(b). From this it should also be clear that even if Western's aborted Rule 59(e) motion were treated as a Rule 60(b) motion, the denial of relief from the $4000 error would still have been proper.

The judgment and orders appealed from are affirmed in their entirety, the parties to bear their own costs in this court.

SO ORDERED.