**Venice L. ARNOLD and Lois M. Arnold, Defendants-Appellants,**

v.

**MELVIN R. HALL, INC., Plaintiff-Appellee.**

**No. 1–384A85.**

Court of Appeals of Indiana, First District.

Aug. 5, 1985.

---

8. Indiana Code section 2–2517 (Burns 1946)    which the court relied upon has been repealed.

John J. Fuhs, Petri & Fuhs, Spencer, for defendants-appellants.

George B. Mathes, Spencer, for plaintiff-appellee.

Thomas W. Dinwiddie, Teresa C. Williams, Wooden, McLaughlin & Sterner, Indianapolis, for amicus curiae Indiana Mortg. Bankers, Inc.

Theodore J. Nowacki, Bose, McKinney & Evans, Indianapolis, for amicus curiae Indiana League of Savings Institutions.

RATLIFF, Presiding Judge.

## ON PETITION FOR REHEARING

Venice and Lois Arnold entered a conditional land sale contract for the purchase of real estate and associated personalty from Melvin R. Hall, Inc. (the corporation).[1] After paying more than one half of the original $135,000 contract price, the Arnolds defaulted. The corporation then sought and received a foreclosure order and deficiency judgment in the Owen Circuit Court. At the sheriff's sale of the realty, the corporation was the sole bidder. Its bid was less than the outstanding debt, consequently, it sought to enforce its deficiency judgment for the total remaining balance due. In *Arnold v. Melvin R. Hall, Inc.* (1985), Ind.App., 478 N.E.2d 696, we reversed the award of a deficiency judgment holding that "absent evidence that the property's value is less than the total remaining deficiency, a mortgagee/vendor who purchases the property at the foreclosure sale is not entitled to a deficiency judgment." *Arnold*, at 699. On appellee Melvin R. Hall, Inc.'s petition for rehearing, we write to explain further the views expressed in that opinion.

Our original decision was based largely on our supreme court's holding in *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641. In *Skendzel*, the vendors sought forfeiture when the purchasers defaulted after paying well over one-half of the original contract price. The vendors were, therefore, seeking not only to retain the substantial payments already made by the purchasers, but also to recover possession of the subject real estate. Our supreme court intervened, however, to prevent the imposition of this penalty on the defaulting purchasers. Initially, they noted that equity abhors forfeitures. The court, quoting from 2 J. Pomeroy, *Equity Jurisprudence*, § 433 (S. Symons 5th ed. 1941), then went on to state:

---

1. The parties set the value of the personal property at $35,000 and the value of the real property at $100,000.

" 'Wherever a penalty or a forfeiture *is used merely to secure the payment of a debt,* or the performance of some act or the enjoyment of some right or benefit, equity, considering the payment, or performance, or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture to be only an accessory, will relieve against such penalty or forfeiture by awarding compensation instead thereof, proportionate to the damages actually resulting from the non-payment, or non-performance, or non-enjoyment, according to the stipulations of the agreement. The test which determines whether equity will or will not interfere in such cases *is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured. If the penalty is to secure the mere payment of money, compensation can always be made, and a court of equity will relieve the debtor party upon his paying the principal and interest.*

.    .    .    .    .

'[The granting of relief in such circumstances is based on the ground that it is wholly against conscience to say that because a man has stipulated for a penalty in case of his ommission to do a particular act—*the real object of the parties being the performance of the act*—if he omits to do the act, he shall suffer a loss which is *wholly disproportionate to the injury sustained by the* other party.]' (Emphasis in original.)"

*Skendzel,* at 231–32, 301 N.E.2d at 644–45. Finally, the court concluded that· in most situations, where the vendor is confronted with a defaulting vendee, forfeiture would effect a penalty on the vendee which is wholly disproportionate to the loss actually suffered by the vendor. *Skendzel,* at 241,

**2.** The remaining personal property, which the Arnolds had agreed to purchase for $35,000, was sold at an earlier sheriff's sale. The net proceeds from that sale, $15,441.75, were also applied to the outstanding balance.

**3.** Melvin R. Hall, Inc. and the amici curiae briefs filed on rehearing cite numerous cases

301 N.E.2d at 650. Hence, permitting the vendor to secure such a remedy would offend our principles of equity and justice. *Id.*

The situation with which we are confronted in this case is strikingly similar to that which confronted the supreme court in *Skendzel.* When the Arnolds defaulted on their conditional land sale contract, they had already paid in excess of one-half of the original purchase price. At the foreclosure sale, the corporation, the sole bidder, paid $54,000 for the property which only two years earlier had a fair market value of $100,000.[2] After costs of conducting the sale were deducted, $53,355.35 was applied to the balance then due. Even after the proceeds of this sale were applied, a balance of nearly $16,000 remained due. The corporation then sought to enforce its deficiency judgment for that amount also. It is this remedy which the Arnolds attacked as being inequitable. We agreed.

The underlying policy of *Skendzel* does not permit the result sought by the corporation. In *Skendzel,* the court, exhibiting its general disdain for forfeitures, intervened to prevent the vendor from reaping ·a $21,000 penalty in addition to recovering possession of the property. If we were to permit the result sought by the corporation here, it would possess the real estate, a very substantial portion of the contract price, *and* a deficiency judgment. This would allow the corporation to realize a recovery nearly double the original contract price; a windfall far in excess of that which was condemned in *Skendzel.* Such a result would, therefore, clearly violate the equitable principles announced in *Skendzel.*

In addition, the supreme court's ruling in *Markel v. Evans* (1874), 47 Ind. 326, does not require revision of our original decision.[3] In *Markel,* Lattimore and Larabee

which they contend support the general rule laid down in *Markel.* Those cases include: *Newtson v. Green* (1932), 203 Ind. 447, 180 N.E. 579 (holding in part that when determining whether a mortgagee is entitled to have a receiver appointed to collect rents paid during redemption period, testimony to effect that property worth more than price realized at fore-

executed promissory notes in favor of the defendant. These notes were secured by a mortgage on property owned by Lattimore and Larabee. The defendant subsequently endorsed the notes over to the plaintiff. Lattimore and Larabee then defaulted on the notes and the plaintiffs sought and received a judgment against them for the balance then due, $1,957.20. At the foreclosure sale, the plaintiffs purchased the property for $850.00. Lattimore and Larabee had no other property, consequently, the plaintiffs sued the defendant/endorser for the remaining deficiency. The defendant asserted on appeal that absent some evidence that the price paid at the foreclosure sale was the most which could be realized from the sale of the property, the plaintiffs were not entitled to a deficiency judgment against the endorser. The court held, however, that the sheriff's sale of the property fixed its value. It concluded; "[w]e can not think that the plaintiffs can now be charged with anything beyond the amount bid by them, on the supposition that the lands were worth more." *Markel,* at 330. Even though the facts with which we were confronted in the present case are similar to those in *Markel,* that case does not control the outcome here.

First, we note that *Markel,* and the other cases to which we are referred, were decided long before our supreme court's decision in *Skendzel v. Marshall.* As our earlier discussion indicated, *Skendzel* was a watershed case marking a fundamental change in the law of this state. Following that decision, Indiana courts have frequently intervened to protect defaulting vendees from the serious consequences attendant

forfeitures. The corporation and amici now argue that we should permit the double recovery sought in this case. They have failed, however, to cite any Indiana cases decided after *Skendzel* which would countenance such a result. We will not rely on the principles announced in these earlier cases to alter the course clearly set by our supreme court in *Skendzel.*

■ Secondly, the cases typified by *Markel* also appear to be based in part on the assumption that the foreclosure sale realizes the fair market value of the property sold. Not surprisingly, therefore, the corporation contends that its $54,000 bid represented the fair market value of the property at issue here. Fair market value is defined, however, as "the price at which property would change hands between a willing buyer and willing seller, neither being under any compulsion to consummate the sale." *Ohio Casualty Insurance Co. v. Ramsey* (1982), Ind.App., 439 N.E.2d 1162, 1167, *trans. denied; see also Southern Indiana Gas & Electric Co. v. Russell* (1983), Ind.App., 451 N.E.2d 673, 676; *City of Lafayette v. Beeler* (1978), 178 Ind.App. 281, 287, 381 N.E.2d 1287, 1291; *Second National Bank v. State* (1977), 174 Ind. App. 168, 171, 366 N.E.2d 694, 696; *State v. Jones* (1977), 173 Ind.App. 243, 250, 363 N.E.2d 1018, 1023, *trans. denied.* Therefore, the sheriff's sale here could not have established the fair market value of the property. A presumption that it did would clearly be erroneous.

■ Finally, the corporation and amici assert that our original decision ignored the impact of Indiana Code section 34–1–

---

closure sale immaterial.); *Russell v. Bruce* (1902), 159 Ind. 553, 64 N.E. 602 (holding that mortgagee who purchases property at foreclosure sale for less than outstanding debt entitled to collect rents paid during redemption period.); *Branch v. Foust* (1891), 130 Ind. 538, 30 N.E. 631 (mere inadequacy of price insufficient grounds to justify setting aside sheriff's sale of property.); *Thomas v. Simmons* (1885), 103 Ind. 538, 2 N.E. 203; *Fletcher v. Holmes* (1865), 25 Ind. 458; *Gilbert v. Lusk* (1952), 123 Ind.App. 167, 106 N.E.2d 404 (mere inadequacy

of price insufficient grounds to justify setting aside sheriff's sale of property.); *Fox v. Jackson* (1946), 116 Ind.App. 390, 64 N.E.2d 799 (mere inadequacy of price insufficient grounds to justify setting aside sheriff's sale of property.); *G.W. Conwell Bank v. Kessler* (1932), 94 Ind. App. 256, 180 N.E. 625 (impliedly supported argument that morgagee can purchase at foreclosure sale and recover deficiency judgment.); *Griffin v. Durfee* (1902), 29 Ind.App. 211, 64 N.E. 237 (mortgagee purchased at foreclosure sale for full amount of outstanding debt.).

53–5 (Burns 1973).[4] That statutory provision states:

> "Order of sale—Execution for deficiency.—When there is an express written agreement for the payment of the sum of money secured, contained in the mortgage, or any separate instrument, the court shall direct in the order of sale that the balance due on the mortgage and costs which may remain unsatisfied after the sale of the mortgaged premises, shall be levied of [on] any property of the mortgage-debtor."

They now argue that this legislative enactment requires the trial court to grant a deficiency judgment for the balance due after the foreclosure sale, plus costs, in all cases, regardless of who purchased at the foreclosure sale or how much was paid. We disagree with this interpretation of the statutory language.

 The statutory enactment cannot be read as urged by the corporation and amici. Their proposed interpretation would permit a vendor/mortgagee to purchase at the foreclosure sale for a mere percentage of the property's fair market value. The vendor/mortgagee could then seek enforcement of its deficiency judgment for the full amount of the remaining debt. In essence, the vendor/mortgagee would have the absolute right to reap a double recovery in every case. Such a result would clearly violate the equitable principles upon which our supreme court based *Skendzel*. In fact, the interpretation suggested by Melvin R. Hall, Inc. and amicus would nullify the central holding of *Skendzel* in many cases by subjecting the vendee/mortgagor to a severe penalty. This interpretation of the statute's language must, therefore, be rejected. Foreclosure remains essentially an appeal to the equitable powers of the court. *Loomis v. Donovan* (1861), 17 Ind. 198, 200; *Farmers Bank & Trust Co. v. Ross* (1980), Ind.App., 401 N.E.2d 74, 76, *trans. denied.* If we were to agree that this statute granted a vendor/mortgagee an absolute right to a deficiency judgment,

we would be ignoring this time honored principle.

For all the foregoing reasons, we reaffirm our original holding. A vendor/mortgagee is entitled to the balance of the debt owed him plus the cost incurred in collecting it. However, he is not entitled to a windfall. Consequently, absent some evidence that the fair market value of the property at the time of the foreclosure sale is less than the balance of the debt then due, whether because of waste, a general decline in the economy, or some other cause not attributable to the conduct of the vendor/mortgagee, the vendor/mortgagee who purchases the property at the foreclosure sale is not entitled to collect a deficiency judgment.

The petition for rehearing is hereby denied.

NEAL and ROBERTSON, JJ., concur.

---

**4.** In its original appellee's brief to this court, the corporation did not raise the efficacy of this statutory provision. Rather, it is raised for the first time in the petition for rehearing.