The **LOMAS AND NETTLETON COMPANY**, Plaintiff–Appellee,

v.

William E. **WISELEY** and Brenda S. **Wiseley**, Defendants,

and

Thomas P. **Kasten**, Intervening Defendant–Appellant.

No. 88–1452.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 4, 1988.

Decided Sept. 1, 1989.

Rehearing Denied Oct. 18, 1989.

Lori F. Kaplan, Murray J. Feiwell, J. Greg Easter, Feiwell & Associates, Indianapolis, Ind., for plaintiff-appellee.

David A. Brooks, Martin Bedrock, Knox, Ind., for defendants and intervening defendant-appellant.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

MANION, Circuit Judge.

Thomas Kasten appeals the district court's order setting aside a foreclosure sale at which he purchased property. Kasten argues that the district court erred in setting aside the sale on the ground that the judgment creditor's attorney negligently failed to attend the sale and submit his client's bid. We reverse.

### I.

The subject of this diversity action is a residential lot in Hammond, Indiana. The plaintiff-appellee, Lomas & Nettleton Company ("L & N") held the mortgage on the property. Mortgagors William and Brenda Wiseley, who are not parties to this appeal, defaulted on the mortgage. L & N obtained a default judgment of foreclosure and the court issued an order that the property be sold at public sale.

John Million, local counsel for L & N in Monticello, Indiana, was to attend the sale and submit a bid on behalf of L & N. The sale took place at the scheduled date and time, September 8, 1987, at 12:00 noon, but Million did not appear. The intervening defendant-appellant, Thomas Kasten, apparently was the only bidder present and purchased the property for $1,000.

Sixteen days later, L & N moved under Fed.R.Civ.P. 60(b) that the sale be set aside. The district court granted this motion and, after Kasten requested reconsideration, held an evidentiary hearing. Million testified that he had known the date and time of the sale and had noted it on his calendar. On the morning of the sale, however, clients detained him in his office. He had an appointment at 11:30, and met with that client between 11:30 and noon, during which time he also took one or two phone calls. Another client stopped in the office around 11:45, and Million talked to him for a few minutes. Million said he noticed his secretary leaving for lunch about noon, but continued talking to his client, "not watching the clock." Around 12:20 or 12:30, his

client left and Million realized that he had missed the sale. He hurried to the court-house, arriving there at 12:35 or 12:40. The county treasurer told him that the marshall had already concluded the sale and left.

Million testified that he had attended foreclosure sales before and was familiar with the procedure and aware that bidding would close at noon. Kasten's counsel asked him, "The only thing that kept you from attending the sale was the fact that you had clients in the office at the time?" Million responded, "Yeah, and I didn't kick 'em out. I kept talking to 'em." He explained that he had been instructed to bid $30,000 for the lot, or if there was competitive bidding, to offer up to $33,233.64, the amount of the judgment.

On the basis of Million's testimony, the district court determined that the sale should be set aside. Kasten now appeals that order.

## II.

Fed.R.Civ.P. 60(b) provides:

> On motion and on such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered ... (3) fraud ... (4) the judgment is void; (5) the judgment has been satisfied ... or (6) any other reason justifying relief from the operation of the judgment.

This court reviews a decision to grant or deny a Rule 60(b) motion only for abuse of discretion. *North Central Illinois Laborers' District Council v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164, 167 (7th Cir.1988). Such a decision stands unless the district court was "very far off base," relying on "forbidden factors" or failing to take into

account a relevant factor. *Id.* at 168 (quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986)).

L & N's Rule 60(b) motion presented two grounds for relief: inadvertence or excusable neglect on the part of counsel (Rule 60(b)(1)) and unjust enrichment of Kasten at L & N's expense (presumably under Rule 60(b)(6)). The district court accepted both grounds; both are now at issue on appeal.

With respect to the first issue, this court has stated frequently that Rule 60(b)(1)'s reference to "inadvertence or excusable neglect" does not authorize relief from the consequences of negligence or carelessness. *S.J. Groves*, 842 F.2d at 167; *Western Transportation Co. v. E.I. DuPont De Nemours and Co.*, 682 F.2d 1233, 1236 (7th Cir.1982); *Bershad v. McDonough*, 469 F.2d 1333, 1337 (7th Cir.1972). Rather, it requires some justification for an error, beyond a mere failure to exercise due care.[1] *Western Transportation*, 682 F.2d at 1236. This court has stated, in upholding a denial of Rule 60(b)(1) relief requested on the basis of an attorney's negligence, that it would be an abuse of discretion to grant Rule 60(b) relief on the basis of a negligent mistake. *Id.* "Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir.1986). Thus the question presented is whether the district court abused its discretion in holding that Million's mistake was excusable.

In justifying the error, the district court relied on Million's status as a "county seat lawyer," finding that his failure to appear was excusable because "he simply had a client that he couldn't get—immediately get rid of without just walking out of an office..... And it is a sole practitioner in a county seat town in north central Indiana."[2] *S.J. Groves* indicates that the

---

1. For example, in *Ellingsworth v. Chrysler*, 665 F.2d 180, 184 (7th Cir.1981), this court held it an abuse of discretion to deny relief from a default judgment when counsel's failure to appear at trial resulted from the court's earlier failure to clarify the trial date, and the record indicated that the attorney was not the only one confused as to the correct date.

2. The district court emphasized that attorney Million showed up on time for the originally scheduled sale only to find out it was delayed a

factors upon which the district court granted relief—the nature of Million's practice and the fact that he had a client in his office—are not sufficient to support a finding of excusable neglect. In *S.J. Groves*, the defendant corporation, against which a default judgment had been entered, requested relief from the judgment because its in-house counsel had simply neglected to answer the complaint. The defendant explained that the in-house staff was small—only two attorneys—and that one of the two was disabled at the time; consequently one attorney was left to handle all incoming documents and overlooked the complaint in the resulting pressure and confusion. This court affirmed the district court's holding that this breakdown of internal procedures "may have been inadvertent, but [was] *not* excusable." *Id.* at 166. The decision reiterated that counsel's carelessness does not justify Rule 60(b)(1) relief. *Id.* at 167. Attorney negligence was also held insufficient to warrant Rule 60(b)(1) relief in *Western Transportation* (computational error) and *Bershad* (error in listing number of shares of stock used to calculate amount of judgment).

Million testified that he had notice of the sale, planned to attend and simply became distracted and failed to realize the time. In *S.J. Groves*, counsel advanced an argument similar to Million's; that is, he became preoccupied with other work and neglected his responsibility to a particular client. *S.J. Groves* is not distinguishable from the case at bar; if anything, Million has offered even less justification for his error than did counsel in that case. If Million's oversight in this case can be termed "excusable," it is difficult to conceive of what the distinction between simple negligence and excusable neglect might be. Million's own testimony offered no real excuse, beyond carelessness, for his failure to attend the sale.

At this juncture we note that L & N is apparently satisfied with its judgment. Rather, it is the proceeding to enforce the

judgment—the foreclosure sale—that the court has set aside under Rule 60(b). Just as federal law, not state law, governs the grant or denial of a new trial, *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983), so too federal law applies in this 60(b) proceeding. See also *General Foam Fabricators v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir.1982). "The grounds and procedures for setting aside a federal judgment are entirely a matter of federal law, on which state law may be disregarded." 11 Wright and Miller *Federal Practice and Procedure* § 2853. In an unusual circumstance involving a substantive right under state law, to have a judgment (and presumably a proceeding) reopened, "the federal court sitting in diversity will give effect to the state-created right." *Id.*

One could argue that Indiana case law regarding setting aside sheriff's sales creates a "substantive" right under 60(b)(6), thus justifying relief. After examining Indiana law and the facts of this case, we think there is no applicable substantive right.

Under Indiana law the trial court does have discretion in determining whether setting aside a sale is appropriate. *Fox v. Jackson*, 116 Ind.App. 390, 64 N.E.2d 799, 801 (1946). In this case, however, the court improperly relied upon Million's status as a small-town sole practitioner to excuse his mistake. *S.J. Groves* and *Ellingsworth* require more than a breakdown of internal office procedures or a careless oversight. The district court also expressed the view that the Seventh Circuit's law was not so rigid as to preclude relief when unjust enrichment would result. On the contrary, this court has commented that it would indeed be an abuse of discretion to grant relief on the basis of negligence. *Western Transportation*, 682 F.2d at 1236. To the extent that one party's benefiting from opposing counsel's error may be termed "unjust enrichment," each of the cited cases

---

week. The record does not indicate whether the plaintiff mortgage company set the sale date when it initiated the foreclosure and then changed the date, or whether it was an independent act of the marshall's office. It doesn't

matter. Million knew the rescheduled date and recorded it in his calendar. Showing up on time for a cancelled sale does not atone for his negligently failing to appear for the rescheduled sale.

denying relief for attorney error resulted in an unjust enrichment.

■ This point implicates L & N's second contention under 60(b)(6), that the insufficient sale price would result in a windfall to Kasten at L & N's expense. Indiana law provides that insufficiency of price alone is not reason to set aside a judicial sale, unless the disparity between value of the property and amount realized on the sale[3] is so great as to "shock the sense of justice and right" or is attended by circumstances indicating fraud or unfairness. *Newhouse v. Farmers Nat. Bank*, 532 N.E.2d 26 at 27 (Ind.App.1989); *Arnold v. Melvin R. Hall, Inc.*, 496 N.E.2d 63, 65 (Ind.1986); *Gilbert v. Lusk*, 123 Ind.App. 167, 106 N.E.2d 404, 413 (1952); *Fox*, 64 N.E.2d at 801. The test is the difference between the amount realized at the sale and the amount that could have been realized at a proper sale. *Id.* at 801. In this case, there is no such disparity, since the sale concededly *was* properly noticed and conducted. L & N seeks to nullify an otherwise proper sale on the basis of its lawyer's failure to attend. This failure does not make the sale itself improper. Significantly, the Indiana Court of Appeals recently stated that a negligent failure to attend the sale is not a ground to set aside the sale (although the Indiana law involving negligence cases is admittedly circuitous, depending on the facts). *Newhouse*, 532 N.E.2d at 28.

Here the district court did determine that the disparity between the value of the property and the sale price was so great as to shock the conscience. It made this determination, however, without receiving any evidence whatsoever of the property's value. It relied instead upon Million's statement that he was prepared to bid as high as $33,233.64. As counsel for L & N conceded at argument, however, this figure indicates little with respect to the value of the property. Million's affidavit indicates the company's concern with bidding in the judgment amount and obtaining title to the property, thereby paving the way for a claim to be filed with the Federal Housing Administration (the precise nature of this claim is not clarified).

But Million testified that he did not know what the property was worth. Even though the hearing was *specifically* concerning the value of the property (alleged unjust enrichment), L & N showed up with no appraisal, no witness familiar with the property, and not even a witness to proclaim that the amount of the judgment (Million's proposed bid) was commensurate to the value (former or present) of the real estate.

The problem here is that the total judgment may have included amounts other than the value of the real estate. The evidence before the district court discloses nothing about how the underlying judgment—the amount of Million's anticipated bid—was calculated. There was a mortgage, but under Indiana law (depending on the language in the mortgage) a presigned mortgage could possibly secure after acquired debt from such things as unspecified future advances, including business loans, credit card charges, installment loans, and even overdrafts. See, e.g., *Citizens Bank and Trust Co. v. Gibson*, 490 N.E.2d 728, 730 (Ind.1986); *Merchants National Bank v. H.L.C. Enterprises, Inc.*, 441 N.E.2d 509, 513 (Ind.App.1982). So-called "dragnet clauses" or open-ended mortgages can secure debt that has no relevance to the value of the underlying real estate. Thus, Million's proposed bid, relayed to him by the mortgage company, is insufficient by itself to upset a valid foreclosure sale when there is no actual proof that the successful bidder was "enriched," much less unjustly enriched. For all the court knew, the real estate could have been abandoned, in a state of disrepair, or even fire-damaged.

The mortgage company was in complete control of this proceeding. It obtained the judgment, and it obviously requested the statutory sale. It hired an attorney to show up at the sale to bid. When he negligently failed to show, the company

---

**3.** This calculation takes into account the likelihood that a forced sale will not bring the fair market value of the property. *Fox*, 64 N.E.2d at 801.

pleaded unjust enrichment under Rule 60(b)(6) (we presume). Under these circumstances, the very least the company could do is *prove* that the valid bidder was enriched, unjustly or otherwise. Only then is it even conceivable that the trial court's "sense of justice and right" would be shocked to the point of setting aside a valid sale. Regardless of what the mortgage company's bid included, however, by failing to submit it, the company cannot claim such a "value" as the basis for setting aside a sale because the successful bid was too low.

L & N cites other cases in which sales have been set aside because the price realized was too low in relation to the value of the property. Aside from the fact that the record here contains no evidence of actual value, the equitable considerations here are not the same as in a case where a bank bids well below its mortgage judgment, thus creating a deficiency which the debtor still owes. The debtors aren't even parties here. Frequently when a foreclosure defendant seeks to set a sale aside, the judgment is usually by default and the mortgagor likely is unable to afford counsel. *See Arnold,* 496 N.E.2d at 66 (DeBruler, J., dissenting). L & N is not a deficiency debtor seeking to avoid overpaying its debt; it is a represented party—a financial institution experienced in foreclosures—whose loss could have been avoided but for its own counsel's carelessness.[4] Admittedly, the low price realized at the sale has likely created a loss which someone, proba-

bly the mortgage company, will have to bear. The question in this equitable proceeding, however, is whether that loss was incurred unfairly so as to shock the court's sense of justice and right.[5]

Furthermore, aside from the fact that L & N has not proved "enrichment" by proving value received, it has not shown the Wiseleys unjustly obtained the property. A public sale was legally noticed. A member of the public showed up and submitted a successful bid. The mortgage company negligently missed the sale that it initiated. The only injustice here would be to deny the successful bidder what he legally purchased.

L & N seems to base its argument on the belief that a windfall (assuming, although lacking evidence, that there was one) is in itself unfair. It argues that the sale should be set aside because the loss it stands to suffer is so great. This argument cuts both ways, however; the possibility that a substantial loss might occur also highlights the lack of care exhibited by L & N's counsel in missing the sale. *See Western Transportation,* 682 F.2d at 1236 (care required depends in part upon the expected benefit or loss). The equities of a case involving negligence do not favor one whose own error caused his loss. *Newhouse,* 532 N.E.2d at 28.

These equities also should extend to the integrity of the sale. A judicial sale must have a high degree of significance and finality associated with it. Prospective bidders will be discouraged from placing bids

---

4. In *Kagan v. Caterpillar Tractor Co.* this court denied the client's claim that the case should be reinstated under 60(b)(6) because of his attorney's gross negligence. To its credit, L & N does not attempt to press its attorney's negligence under its 60(b)(6) argument. Any argument that the mortgage company should not have to pay for the mistake of its attorney is one that should be confined between the attorney and the client. *Western Transportation* and *Bershad* also involved errors by representatives as opposed to the parties themselves; nevertheless this court held in those cases that negligence was not sufficient to warrant relief.

5. We emphasize that L & N mounts no challenge to the conduct of the sale (for example, the formal notice requirements). The mortgage foreclosure procedures "[tend] to insure that

damages sought by the seller ... bear a relationship to the commercial reality of the transaction" and "are generally adequate to produce just outcomes." *Arnold,* 496 N.E.2d at 65–66. In the interest of promoting the policy of finality, the sale is presumed, absent any procedural defect, to produce a fair price. *Id.* at 65. The presence of only one bidder at the sale does not rebut this presumption or invalidate the sale. *Id.* See also *Hines v. Behrens,* 421 N.E.2d 1155, 1159 (Ind.App.1981), where the mortgagee bank, which was not made a party to a lawsuit which resulted in a judgment (lien) against the mortgagor, was found to have received adequate notice of the foreclosure sale because of newspaper publication. The sale (which the bank did not attend) extinguished the bank's $9400 mortgage lien.

at these sales if what they were told was a winning bid could be later negated by the statement of a lawyer that his client would have bid more had he attended the sale. Indiana law requires more certainty than that. By law the public receives notice of the sale.[6] The purchaser obtains a sheriff's deed free of all previous encumbrances, including mortgages and judgment liens. Interested parties can protect their interest with a bid. The sale, for all concerned, should be final. Negligence by a secured party cannot be the sole factor that upsets a valid bid by a third party at a properly advertised public foreclosure sale.

## III.

The district court based its decision primarily on two considerations: first, that Million's failure to attend the sale was excusable; second, that the disparity between value and price realized was so great that the resulting unjust enrichment shocks the conscience. Although the district court has discretion in determining the validity of judicial sales, he abused his discretion in this case. While we can share his sympathy for a small-town lawyer distracted by a crowded calendar, in the context of a Rule 60(b)(1) motion, negligence is not a ground for relief. Indiana law likewise denies relief on this basis. Million's own testimony establishes that his negligence was the sole reason for L & N's alleged loss. The court's second finding, that the price was inadequate, was wholly unsupported by the record. L & N alleged an unjust windfall to Kasten, but offered no evidence to support its claim that the property's value far exceeded the bid amount. Thus there is no basis for a holding that the disparity was so great as to shock the sense of justice and right. The record does not reveal the property's value, but merely a proposed bid with no evidence of how it relates to the property's worth. Accordingly, we vacate the decision of the district court and remand to the district court with directions to

reinstate the sheriff's sale of the subject property.

VACATED AND REMANDED.

CUDAHY, Circuit Judge, dissenting.

While conceding, at least *arguendo*, the merit of the majority's discussion of "excusable neglect," I cannot accept the other, and necessary, branch of its argument. As the majority notes, the district court determined that the disparity between the value of the property and the sale price was so great as to shock the conscience. A willing and informed buyer was ready to pay $33,233.64 in exchange for title to the property. The majority suggests possible reasons why this bid ceiling might have reflected special considerations. But a bid in hand seems to me more probative than several appraisals in the bush. It at least creates a presumption of gross discrepancy between "value" and the $1000 actually received at the sale. The fact that $33,233.64 was loaned against the property does not suggest to me that it was likely worth only $1000. Before our concluding that the Lomas & Nettleton bid was totally non-probative, I think it was up to Kasten to provide a persuasive reason why this is the case. On the record before us, this has not been done.

Whether the price realized at a sheriff's sale is so inadequate as to "shock the conscience" of the court supervising the sale is obviously a highly discretionary judgment, which depends on the particular circumstances surrounding the sale in question. The Indiana courts have stressed that, when ruling on a petition to set aside a sheriff's sale, "the [trial] court has wide discretion to avoid 'hardship and sacrifice.'" *Michigan Mortgage Corp. v. Oakley*, 68 Ohio App.2d 83, 426 N.E.2d 1195, 1196 (1980) (noting that court had discovered *only one reported case* in which a trial court's ruling on a petition to set aside a foreclosure sale had been reversed for

---

6. This sale was executed under Indiana law, although since the judgment was obtained in federal court under diversity jurisdiction, the sale was noticed and conducted by a federal marshal. Indiana Code 32–8–16–1 et seq. governs the procedure for a mortgage foreclosure sale. 32–8–16–5 states in part "Every sale made pursuant to this chapter shall be without relief from valuation or appraisement laws and without any right of redemption therefrom."

abuse of discretion), *cited with approval in Smith v. Federal Land Bank of Louisville,* 472 N.E.2d 1298, 1303 (Ind.App.1985). "Each case of this kind must depend largely upon its own peculiar facts. Whether the circumstances under which the sale is held, coupled with inadequacy of price, are sufficient to justify setting aside the sale is a matter largely within the discretion of the trial court, subject, of course, to review for an abuse thereof." *Fox v. Jackson,* 116 Ind.App. 390, 394, 64 N.E.2d 799, 801 (1946).

The majority chides Lomas & Nettleton for neglecting to present evidence of the property's "actual value" to the district court. Apparently the majority views this defect as fatal to Lomas & Nettleton's case, and sufficient to support a finding that Judge Sharp abused his discretion by invalidating the sheriff's sale. I believe that Indiana law is exactly the opposite of the majority's holding—under Indiana law, evidence of the "actual" fair market value of the property may be *irrelevant* to the issues involved here. Instead, the only way a party can establish that the price realized at a sheriff's sale is inadequate is by presenting evidence of what that party intended to bid if he or she had attended the sale.

In Indiana, the issue in a proceeding to set aside a sheriff's sale is *not* how the price at the sheriff's sale compares to the "fair market value" of the property, considered in the abstract. Instead, the relevant comparison is between the price realized and the price that *could have been attained at a proper sheriff's sale* but for the non-attendance of the party petitioning to set aside the sale. Thus, not only was the evidence Lomas & Nettleton presented about its contemplated bid relevant; it was the *only* evidence it could have offered to establish the inadequacy of the sale price.

For example, in *Fox v. Jackson,* 116 Ind. App. 390, 64 N.E.2d 799 (1946), the party seeking to set aside the sale did exactly what the majority faults Lomas & Nettleton for failing to do—the petitioner presented evidence of the "actual" fair market value of the property ($6,000), and argued that the price realized at the sheriff's sale ($3,000) was grossly inadequate. The court held that the petitioner had failed to present competent evidence to establish a price disparity justifying equitable relief.

The evidence would support the belief that the property had a market value of something over $6000, but *the test of adequacy of price is not what the property is worth, but what it will bring at a fair sheriff's sale,* which is, of course, a forced sale. No witness expressed an opinion as to what price the property would bring at a forced sale, but the court was entitled to believe that such a price might be substantially less than the fair market value.

*Id.* at 394, 64 N.E.2d at 801 (emphasis added; citation omitted).[1] In the present case, Lomas & Nettleton presented the sort of evidence found lacking in *Fox*—evidence of what an "actual" bidder who had planned to attend the sheriff's sale was willing to pay. Yet the majority now finds that this evidence too is inadequate. I cannot agree with the majority that Lomas & Nettleton failed to offer proper evidence to establish that the sheriff's sale produced a grossly inadequate price.

Contrary to the majority, therefore, I conclude that Lomas & Nettleton presented evidence that was fully competent to establish what the price would have been at a fair sheriff's sale. In the present case, in which the price paid at the sheriff's sale was at most *one-thirtieth* of the amount which could have been realized at a proper sale, Lomas & Nettleton has clearly shown a price disparity which, in the district

1. *See also Arnold v. Melvin R. Hall, Inc.,* 481 N.E.2d 409, 412 (Ind.App.1985) (noting that "[f]air market value is defined [ ] as 'the price at which property would change hands between a willing buyer and willing seller, neither being under any compulsion to consummate the sale'"; fair market value therefore of little relevance in gauging adequacy of price at sheriff's sale), *aff'd,* 496 N.E.2d 63 (Ind.1986); *Gilbert v. Lusk,* 123 Ind.App. 167, 183, 106 N.E.2d 404, 413 (1952) ("a Sheriff's sale is a forced sale, and the test of inadequacy of price is not what the property is worth, but what it will bring at a fair Sheriff's sale").

court's discretion, could be found to "shock the conscience." In other cases involving an attorney's negligent failure to attend a sheriff's sale, far smaller relative price disparities have been found sufficiently "shocking" to justify invalidating the sale. *See, e.g., Newhouse v. Farmers Nat'l Bank of Shelbyville,* 532 N.E.2d 26, 28 (Ind.App.1989) (disparity between $3,000 paid at sheriff's sale and $34,200 which attorney for mortgagor was authorized to bid "would permit, [but] not compel, the vacation of the sheriff's sale"); *Michigan Mortgage,* 68 Ohio App.2d 83, 426 N.E.2d 1195 (1980) (property sold at first sale for $16,000, but ultimately realized $25,700 after first sale properly set aside). In situations involving other types of mishaps in connection with a sheriff's sale, relative price disparities of far less moment than in the present case have also been found sufficient to warrant equitable intervention.[2]

Apparently, the majority holds that the lack of an appraisal defeats Lomas & Nettleton's claim as a matter of law. In the face of the bid Lomas & Nettleton was prepared to make, this is not a prudent rule. Indiana law affords much more leeway to the court supervising a sheriff's sale. As the Indiana Supreme Court has recognized, "[t]he purpose of the [sheriff's] sale is not to afford some stranger an opportunity to make off with the property of the judgment defendant" for a pittance, *Home Owners' Loan Corp.,* 220 Ind. at 592, 44 N.E.2d at 991; instead, the sale is intended to realize the highest practicable price in satisfaction of debts which are in default. By reversing the district court's judgment in this case, the majority renders the sheriff's sale as arbitrary and capricious as a lottery, whereby those lucky enough to be in attendance may take advantage of the careless mistakes of others more interested in the property. Judge Sharp was entirely justified in finding a discrepancy which shocks the conscience. Therefore, I respectfully dissent.

---

2. *See, e.g., Home Owners' Loan Corp. v. Braxtan,* 220 Ind. 587, 591–93, 44 N.E.2d 989, 991–92 (1942) (sheriff's sale properly set aside where property sold for $1,025, but another bidder arrived later with $6,000 cash in hand); *Fletcher v. McGill,* 110 Ind. 395, 399, 10 N.E. 651, 653 (1887) (property valued at $7,000 sold for $900; "[t]hat the price ... was grossly inadequate admits of no discussion"); *cf. Ballentyne v. Smith,* 205 U.S. 285, 27 S.Ct. 527, 51 L.Ed. 803 (1907) (setting aside sheriff's sale under pre-*Erie* "general common law," where price realized at sale at least seven times below value, even though no indication that conduct of sale irregular).