**Michele A. ROBB, individually and as a personal representative of the Estate of Paul D. Robb, Plaintiff–Appellant,**

v.

**NORFOLK & WESTERN RAILWAY COMPANY, Defendant–Appellee.**

No. 96–3122.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1997.

Decided July 17, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 12, 1997.

Martin W. Kus, Gene M. Jones, Newby, Lewis, Kaminski & Jones, LaPorte, IN, Mark E. Spitzer (argued), Browne, Spitzer, Herriman, Stephenson, Holderead & Musser, Marion, IN, for Plaintiff–Appellant.

John C. Duffey (argued), Geoffrey L. Blazi, Stuart & Branigin, Lafayette, IN, for Defendant–Appellee.

Before BAUER, WOOD, Jr., and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

This appeal concerns the issue of whether attorney negligence in missing a filing deadline may be deemed "excusable neglect" for purposes of Fed.R.Civ.P. 60(b)(1). The plaintiff-appellant, Michele A. Robb, brought a wrongful death action against the defendant-appellee Norfolk & Western Railway Company ("NWR" or "the railroad"). Because Robb's attorney failed to submit a timely brief in response to the railroad's summary judgment motion, the district court granted judgment in favor of NWR. Subsequently, the plaintiff's attorney filed a motion for relief from the judgment under Rule 60(b)(1), noting that he had reached an agreement with opposing counsel for an extension of time in which to file his responsive brief, and arguing that his failure to notify the court of this agreed-upon extension amounted to "excusable neglect." The trial judge denied the Rule 60(b)(1) motion, stating his belief that he lacked discretion to grant the motion because of what he classified as a "hard and fast" rule in this circuit that attorney negligence can never be considered "excusable neglect." However, the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), underscored the equitable nature of a court's "excusable neglect" determination

and clarified that "excusable neglect" could "encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394, 113 S.Ct. at 1497. Consistent with *Pioneer*, we remand this case to the district judge in order that he might exercise his discretion in ruling on the plaintiff-appellant's Rule 60(b)(1) motion.

## I. BACKGROUND

The plaintiff-appellant's husband, Paul D. Robb, was killed on September 15, 1993 when the car he was driving collided with a train at a railroad crossing in Marshall County, Indiana. In 1994, Michele A. Robb, the decedent's wife, brought a wrongful death action against NWR, both individually and in her capacity as personal representative of her husband's estate. Robb alleged that the railroad (which owned and operated both the train and the railroad crossing involved in the accident), had "negligently failed to adequately protect [the decedent] from the danger of collision with oncoming train traffic." [1] The Robb lawsuit was filed in Indiana state court, and subsequently removed to the federal district court on the basis that the parties were of diverse citizenship. 28 U.S.C. § 1332.

The railroad filed a motion for summary judgment on December 1, 1995, after discovery had been completed. Robb's response to this motion was due on December 19, 1995. A final pre-trial conference was scheduled for February 5, 1996 and the trial was set for February 20, 1996. At the time the responsive brief came due in December, Robb's lead attorney, Martin W. Kus, found himself involved in "substantive and time consuming negotiations" relating to two of his other cases. He thus asked counsel for NWR if he would object to an extension of time in which to file a response to the summary judgment motion. When counsel for the railroad voiced no objection, Attorney Kus concluded that he had reached an informal, oral agreement for an extension until January 8, 1996. Notwithstanding the demands on Kus' sched-

ule, Robb's law firm, under Kus' direction, attended to various aspects of the case, such as noticing the depositions of Mr. Robb's treating physician and nurse and various expert witnesses, responding to NWR's request for a settlement demand, forwarding a list of witnesses and exhibits to NWR's counsel, and preparing the response brief that Kus believed to be due January 8. Robb's attorney had failed, however, to notify the trial court concerning the agreement reached, nor had he obtained the court's approval for the extension, as required by local rule, which provided, in relevant part:

> [E]xtensions of time shall be granted only by order of the assigned or presiding judge or magistrate for good cause shown.... *Failure to file an answer brief or reply brief within the prescribed time period may subject the motion to summary ruling.*

Northern District of Indiana Rule 7.1. On January 4, 1996, sixteen days after the response was due, the district judge granted summary judgment in favor of NWR, on the basis that the plaintiff had failed to file a response to the summary judgment motion.

On January 9, 1996, the plaintiff Robb filed a Motion to Reconsider and for Relief from Judgment, pursuant to Rule 60(b), arguing that his "mistake and inadvertence" in failing to inform the court that he and the railroad had agreed to an extension constituted "excusable neglect." At a hearing on this motion, Attorney Kus admitted that he was aware of the requirement that extensions could only be granted with the approval of the court, and conceded that he had failed to seek such approval. Robb's attorney "offer[ed][not] by way of excuse, [but] by way of explanation" that he had failed to comply with this rule because opposing counsel had not objected to the extension and because he did not think of it due to the pressure of other professional demands on his time. Kus argued that his lack of bad faith, the fact that counsel for NWR had agreed to the extension without objection, and the substantial

1. Robb's complaint alleged that the railroad crossing where the accident occurred was "extra hazardous" (and known to be so by NWR), in that (a) it "failed to provide [drivers with] an

unobstructed view of oncoming train traffic," and (b) there were no "active traffic control warning signals and devices at [the] crossing."

time devoted to preparing the case on the plaintiff's behalf all argued in favor of vacating the entry of summary judgment and deciding the case on the merits. In opposing Robb's Rule 60(b) motion, lead counsel for the railroad advised the court that he recognized the difficulty of "trying to always comply with the rules as best you can being cognizant of what they are," but also stated that, understandably, he was duty-bound to advocate that the entry of summary judgment stand. After hearing the parties' oral arguments, the trial judge reluctantly denied Robb's motion, concluding that he lacked discretion to grant relief because of what he saw as a firm rule in the Seventh Circuit "unambiguously prohibiting a grant of a Rule 60(b)(1) motion for attorney carelessness or negligence." Mem. Op., 169 F.R.D. 345, 347–48, 349. The trial judge stated that it was not his role "to overrule circuit precedent," but he also noted that Seventh Circuit law appeared to him to be in some tension with the Supreme Court's comparatively broad definition of "excusable neglect" in *Pioneer*. *See* 507 U.S. at 394, 113 S.Ct. at 1497–98 ("[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.").

In concluding his memorandum opinion, the district judge made clear that he would have granted Robb's 60(b)(1) motion if not for his perception that Seventh Circuit precedent prohibited him from exercising discretion. The court observed, based upon a ten-year personal knowledge of Robb's lead attorney, that he was "among the bar's most conscientious in following the district's rules and meeting deadlines." Mem. Op. at 346. The trial court further found that the error of appellant's counsel in failing to give notice to the court of the agreed-upon extension of time was "minor," did *not* amount to "*flouting the rules or ignoring the case*," and was "sufficiently rare to allow characterization of the neglect as excusable." *Id.* at 349. The court concluded that if he were to grant the motion, the "only 'prejudice' to [defendant] would be that its summary judgment motion would face testing on its merits with due regard to [plaintiff's] evidence and arguments, rather than being decided in the absence of opposition." *Id.* It is clear from the district judge's memorandum opinion that he believed he was without discretion to consider these factors, and that for this reason he denied Robb's 60(b)(1) motion. Robb appeals.

## II. ISSUE

The question presented is a narrow one: "Did the trial judge err when he concluded that he lacked *discretion* to determine whether the negligence of Robb's attorney amounted to "excusable neglect" for purposes of Rule 60(b)(1)?"

## III. DISCUSSION

### A. Standard of Review

■ The text of Rule 60 provides for discretionary relief from a final judgment on the basis, *inter alia*, of "excusable neglect." The Rule states that:

> On motion and upon such terms as are just, the court *may* relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or *excusable neglect* . . .

Fed.R.Civ.P. 60(b)(1) (emphasis added). A trial court's decision to deny Rule 60(b) relief "is entitled to great deference," and is reviewed under the abuse of discretion standard. *Tobel v. City of Hammond*, 94 F.3d 360, 362 (7th Cir.1996) (citations omitted). "We will find that a district court has abused its discretion only if no reasonable person could agree with the [ruling]." *Id.* The abuse of discretion standard, however, obviously presents a conundrum in the present case, for here *the district judge concluded that he was without discretion to exercise.* We therefore choose not to frame the issue, as the appellant does in her brief, by asking whether the district court "abuse[d] its discretion in ... determining that it had no discretion." Rather, we address the legal assumption underlying the district court's conclusion that it had no discretion; namely, the premise that our case law "unambiguously prohibit[s] a grant of a Rule 60(b) motion for attorney carelessness or negligence."

We conclude that this premise is not valid, in light of the Supreme Court's 1993 decision in *Pioneer*, 507 U.S. 380, 113 S.Ct. 1489, as well as cases from this circuit which have acknowledged *Pioneer*'s holding that the "excusable neglect" can include "omissions through carelessness and mistake." *Matter of Bulic*, 997 F.2d 299, 302 (7th Cir.1993); *see also Matter of Singson*, 41 F.3d 316, 319 (7th Cir.1994).

### B. "Excusable Neglect"

#### 1. Pre-*Pioneer* Case Law

Prior to 1993, the circuit courts of appeal were divided over the question of whether attorney negligence could constitute "excusable neglect," as that term is used in Rule 60(b)(1) and elsewhere in the federal procedural rules. *See Pioneer*, 507 U.S. at 387 n. 3, 113 S.Ct. at 1494 n. 3 (noting circuit split). This circuit was among those that defined "excusable neglect" narrowly. *Id.* (discussing *In re Danielson*, 981 F.2d 296 (7th Cir. 1992)). In order to qualify as "excusable neglect" under our case law, an attorney's omission must have been attributable to some kind of "exceptional circumstance," and not mere carelessness or negligence. For example, in *Lomas & Nettleton Co. v. Wiseley*, 884 F.2d 965 (7th Cir.1989), a case relied upon by the district court, we reversed the trial court for granting a motion to set aside a judicial sale, where the moving attorney did not attend the sale because he was meeting with clients and "not watching the clock." *Id.* at 966. The *Lomas* decision held that "it would be an abuse of discretion to grant Rule 60(b) relief on the basis of a negligent mistake" because "*[n]either ignorance nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1)*." *Id.* at 967 (citing *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir.1986)). *Lomas* was preceded by cases such as *N. Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164 (7th Cir.1988), in which we also set forth the rule that mere carelessness by a litigant or his attorney could not be deemed "excusable neglect." *Id.* at 167. Earlier, in *Western Transp. Co. v. E.I. DuPont de Nemours and Co.*, 682 F.2d 1233 (7th Cir.1982), we likewise emphasized that a "negligent mistake, that is one evincing a *lack of due care*, is not a proper ground for relief under Rule 60(b)." *Id.* at 1236 (citation omitted).[2]

### 2. The Supreme Court's Decision in *Pioneer*

We need not dwell on our "excusable neglect" case law prior to 1993, for in that year the Supreme Court resolved the aforementioned circuit split over the meaning and scope of "excusable neglect," specifically rejecting the "narrow" approach taken by this circuit and others. *Pioneer*, 507 U.S. at 387, 113 S.Ct. at 1494. The Court's decision in *Pioneer* arose from a bankruptcy proceeding in which an unsecured creditor sought permission to submit a late filing, pursuant to Bankruptcy Rule 9006(b)(1), on the basis that the inadvertent failure of its attorney to comply with an earlier deadline was the result of

**2.** One pre-*Pioneer* case from this circuit which departed from a narrow definition of "excusable neglect" was *Redfield v. Continental Cas. Co.*, 818 F.2d 596 (7th Cir.1987), in which the majority held that the trial court had not abused its discretion by granting the plaintiff's motion for an extension of time to file a notice of appeal on grounds of excusable neglect. *Id.* (interpreting "excusable neglect" in the context of Fed. R.App.P. 4(a)(5)). That aspect of the *Redfield* decision prompted a dissent from this judge, on the grounds that the majority had failed to follow clear circuit precedent. *Id.* at 611–15 (Coffey, J., dissenting) (by characterizing an attorney's inattentiveness to dates set forth in a court file as "excusable," "[t]he majority has ... expanded the scope of excusable neglect to include mere carelessness on the part of an attorney."). At oral argument and in its brief, NWR has relied upon the *dissenting* opinion in *Redfield*. It is important to note, as an initial matter, that *Redfield* did not involve an attorney who, cognizant of a looming deadline, obtained the approval of opposing counsel for an extension but then neglected to inform the court. Rather, at least on this judge's view of the facts in *Redfield*, the appeal in that case presented the question of whether an attorney's carelessness in reviewing the dates in a court file could be deemed "excusable neglect" *under the narrow definition prevailing in this circuit a decade ago*. In any event, it would be a mistake to rely too heavily on either the majority or the dissenting opinion in *Redfield*, because that case was decided some ten years ago, and six years *prior* to the Supreme Court's 1993 *Pioneer* decision, which considerably broadened the parameters of "excusable neglect."

"excusable neglect." The Court held that this inadvertent failure could constitute "excusable neglect" as that term is used in the Bankruptcy Rules. The *Pioneer* Court cited this circuit's decision in *In re Danielson, supra,* (which held that "sloth, ignorance and *other negligence*" did not qualify as "excusable neglect") as an example of a "narrow view … requiring a showing that the delay was caused by circumstances beyond the movant's control." 507 U.S. at 387 n. 3, 113 S.Ct. at 1494 n. 3. This narrow interpretation of "neglect," according to the Court, was not consistent with the word's " 'ordinary, contemporary, common meaning,' " *Id.* at 388, 113 S.Ct. at 1494–95 (citation omitted), as evidenced by dictionary definitions:

> The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to *esp[ecially] through carelessness.*' *Webster's Ninth New Collegiate Dictionary* 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.

*Pioneer*, 507 U.S. at 388, 113 S.Ct. at 1494–95.

Although *Pioneer* involved Bankruptcy Rule 9006(b)(1), the Court also discussed the meaning of the term "excusable neglect" as it is used elsewhere in the array of federal procedural rules, including Federal Rule of Civil Procedure 60(b)(1). *See also Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir.1996) ("the term bears the same or similar meaning throughout the federal procedural domain."). Specifically, *Pioneer* held that *"for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."* *Id.* at 394, 113 S.Ct. at 1497 (emphasis added). The Court also held that the determination of what amounts to "excusable neglect" under Rule 60(b) is:

> at bottom an *equitable* one, taking account of *all the relevant circumstances* surrounding the party's omission. These include … the danger of prejudice to the [defendant], the length of the delay and its po-

tential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted within good faith.

*Id.* at 395, 113 S.Ct. at 1498.

### 3. Post-*Pioneer* Case Law

Under the approach set forth by the Supreme Court in *Pioneer*, we think it is clear that a trial court has *discretion* to consider the equities and then determine whether a missed filing deadline attributable to an attorney's negligence is (or is not) "excusable neglect." Moreover, we do not agree with the trial judge's broad statement that "the Seventh Circuit's post-*Pioneer* decisions have not modified the rule that attorney negligence *cannot* constitute 'excusable neglect.' " At least two of our post-*Pioneer* decisions—not cited by the trial judge—explicitly acknowledged that *Pioneer* broadened the definition of "excusable neglect." Shortly after *Pioneer* was decided, in *Matter of Bulic*, 997 F.2d 299, 302 (7th Cir.1993), we noted that the Supreme Court had "recently elaborated on the standard for 'excusable neglect' " and we observed that under *Pioneer*, "excusable neglect" could include "*omissions through carelessness and mistake.*" *Id.* We also quoted with approval the relevant equitable factors set forth in *Pioneer*. *Id.* Similarly, in *Matter of Singson*, 41 F.3d 316 (7th Cir.1994), we cited *Pioneer* for the proposition that it is "possible to show 'excusable neglect,' … *without identifying any 'extraordinary' circumstance,*" *Id.* at 319, thus acknowledging a departure from our pre-*Pioneer* case law.

NWR relies primarily upon two of this circuit's post-*Pioneer* decisions, *Matter of Plunkett*, 82 F.3d 738 (7th Cir.1996) and *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132 (7th Cir.1996) to support its position that Attorney Kus' negligence in this case may not be considered "excusable neglect." We are of the opinion that both cases are distinguishable from the case presently before the court.

In *Plunkett*, the only post-*Pioneer* decision cited by the district court, we did not have occasion to discuss *Pioneer* at length, and

indeed only cited that opinion for the proposition that "[e]xcusable neglect has an established meaning." *Id.* at 742. We did state in *Plunkett* that "inattentiveness to the litigation is not excusable." *Id.* Specifically, we held that "[m]issing a filing deadline because of *slumber* is fatal" *Id.* (emphasis added). We believe that *Plunkett* is distinguishable because Robb's attorney was neither "inattentive" to the litigation, nor did he miss the filing deadline because of "slumber." The record reflects that he had spent time on the plaintiff's case and was attending to various pre-trial matters, but became busy with other cases at approximately the same time the responsive brief was due. Recognizing that these other obligations would make compliance with the deadline difficult, he requested a brief extension from the firm representing NWR, which had no objection. Moreover, Robb's attorneys continued to work on the case during the period in which Kus believed that the filing deadline had been extended (i.e., late December 1995 through January 8, 1996). Kus was therefore negligent—not in the sense of neglecting the case altogether (i.e., "slumbering")—but rather because he failed to inform or seek the approval of the trial court after opposing counsel had agreed to the extension. Although we do not condone such infractions of the rules, it is clear that Attorney Kus' conduct was a far cry from that of the mortgagee in *Plunkett*, who "abandon[ed] the litigation" for a period of some ten years.

In addition to *Plunkett*, NWR relies upon this court's post-*Pioneer* decision in *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir.1996), to support its position that Attorney Kus' negligence may not be deemed "excusable neglect." Although *Prizevoits* did not discuss *Pioneer* in depth,[3] it did recognize *Pioneer*'s holding that " 'excusable neglect' 'is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer.' " *Id.* at 134 (quoting *Pioneer*, 507 U.S. at 391, 113 S.Ct. at 1496). Moreover, as with *Plunkett*, *Prizevoits* is readily distinguishable. In *Prizevoits*, we were called upon to determine

whether the actions of an attorney who failed to file a notice of appeal until *after* the filing deadline had expired amounted to "excusable neglect" for purposes of Fed.R.App.P. 4(a)(5). Following the entry of a judgment by the district court, the attorney in *Prizevoits* filed a motion to extend the time for filing a Rule 59(e) motion to alter or amend the judgment, even though the Federal Rules of Civil Procedure do not permit such extensions. *See* Fed.R.Civ.P. 6(b). He then waited until after the court denied this extension motion to file a notice of appeal, but by this time the deadline for filing the notice of appeal was well past. In explaining his failure to file a timely notice of appeal, the attorney—a "highly experienced federal litigator"—argued that "having been retained recently he needed more than 10 days to prepare a Rule 59(e) motion and that once the motion for an extension of time within which to file the [Rule 59(e)] motion was made he had to wait and see what the district court did with it." *Id.* at 133. We rejected these arguments as "transparently inadequate" because "Rule 6(b) makes plain both that the 10-day limit on filing a Rule 59(e) motion *cannot* be extended, no matter how new the party's lawyer is, and that there was nothing to wait for, since the district court had no power to grant the motion." *Id.* (emphasis added). We therefore held that the attorney's failure to meet the notice-of-appeal deadline did not fall within the bounds of "excusable neglect" for purposes of Fed. R.App.P. 4(a)(5). *Id.* In fact, we characterized this failure as "egregious," noting that the attorneys excuses for missing the deadline were "so thin as to leave the lapse not only unexcused but inexplicable." *Id.* at 134.

By contrast, although we do not approve of Attorney Kus' failure to inform the court concerning the agreement he had reached with NWR for an extension, we do not believe that his conduct can be characterized as "egregious." In fact, the district judge observed that the error of Robb's attorney was "minor" and did not amount to "flouting the rules or ignoring the case." Likewise, we do

---

**3.** Judge Eschbach's perception that the court had failed to address *Pioneer* adequately prompted

him to write a dissenting opinion. *Id.* at 135–36.

not find Kus' explanation of events so weak as to render his lapse "inexplicable." Attorney Kus testified that he did not think to inform the court of the extension because (a) NWR had voiced no objection, and (b) he was involved at the time with "substantive and time consuming negotiations" relating to two of his other cases. Even under these circumstances, as Kus admits, he *should* have informed the court of the agreed-upon extension. However, his reasons for failing to do so, in our view, are more compelling than the "transparently inadequate" procedural arguments which the attorney in *Prizevoits* offered to explain his actions. Because *Prizevoits* is so clearly distinguishable, it in no way precludes us from holding that Attorney Kus' actions fall within the parameters of "excusable neglect."

Finally, we note that in addition to *Plunkett* and *Prizevoits*, NWR relies in its brief upon a handful of other post-*Pioneer* cases from this circuit which in one way or another involved the issue of "excusable neglect." *United States v. McKenzie*, 99 F.3d 813 (7th Cir.1996); *Tobel v. City of Hammond*, 94 F.3d 360 (7th Cir.1990); *Helm v. Resolution Trust Corp.*, 84 F.3d 874 (7th Cir.1996); *United States v. Indoor Cultivation*, 55 F.3d 1311 (7th Cir.1995); *Jones v. Phipps*, 39 F.3d 158 (7th Cir.1994); *Johnson v. Gudmundsson*, 35 F.3d 1104 (7th Cir.1994). What all of these cases have in common is their silence concerning the import of the Supreme Court's decision in *Pioneer*. Because these cases are highly fact-specific (like *Plunkett* and *Prizevoits*) and because they neither discuss nor cite *Pioneer*, we believe that they cannot assist us in resolving the question before the court: Whether, in light of *Pioneer*, the trial judge had discretion to determine whether the failure of Robb's attorney to inform the court of the agreed-upon extension constituted "excusable neglect."[4]

■ Building upon our decisions *Bulic* and *Singson, supra*, which clearly acknowledged *Pioneer's* broader reading of "excusable neglect," we wish to clarify that there is not a "hard and fast" rule in this circuit which bars a trial judge from exercising discretion to determine whether attorney negligence in missing a filing deadline may be deemed "excusable neglect." In the absence of an actual exercise of discretion by the trial judge, it would be problematic to hold that there has been an *abuse* of discretion in this case. Nevertheless, because we are of the opinion that the district judge's refusal to grant Robb's motion was based on the incorrect premise that he lacked discretion to do so, we vacate the district court's order and remand this case so that the trial judge, consistent with *Pioneer*, may exercise his *discretion* in assessing whether the negligence of Robb's attorney amounts to "excusable neglect" warranting relief from the entry of summary judgment. Our holding— mandated by the Supreme Court's *Pioneer* decision[5]—is also a limited one in the respect that we neither venture a comment on *how* the district judge ought to exercise his discretion in ruling on the Rule 60(b)(1) motion, nor express a view as to how the court should dispose of NWR's motion for summary judgment in the event that it vacates its earlier judgment.

By following *Pioneer* in a clear and straightforward fashion, we join the other circuits that acknowledge "excusable neglect" has a new and broader meaning in the aftermath of the Supreme Court's 1993 decision. *See United States v. Thompson*, 82 F.3d 700, 702 (6th Cir.1996) (*Pioneer* "provides us with a more liberal definition of what constitutes excusable neglect...."); *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir.1996); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 849–50 (11th Cir. 1996); *Chemetron Corp. v. Jones*, 72 F.3d

---

4. By pointing out that these cases do not discuss or cite *Pioneer*, we do not mean to suggest that they were incorrectly decided, much less that they are inconsistent with *Pioneer*.

5. All Article III courts, including this one, are bound to follow the holdings of our Nation's highest court, including its interpretation of "excusable neglect" in Rule 60(b)(1). *See United*

States v. Gillespie, 974 F.2d 796, 804 (7th Cir. 1992) ("[O]ur obligation is to follow Supreme Court precedent, not contract or expand it...."); *Bae v. Peters*, 950 F.2d 469, 478 (7th Cir.1991) ("If there [is] a conflict between this circuit's precedent and Supreme Court precedent, we are bound to follow the Supreme Court.").

341, 349 (3rd Cir.1995); *Fink v. Union Cent. Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir.1995) ("[T]he Supreme Court recently established a more flexible analysis of the excusable neglect standard in *Pioneer....*"); *Reynolds v. Wagner*, 55 F.3d 1426, 1429 (9th Cir.1995) ("[T]he Supreme Court appears to have just changed the rules. *See Pioneer....*"); *Virella–Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 454 (1st Cir.1995); *United States v. Clark*, 51 F.3d 42, 43–44 (5th Cir.1995); *City of Chanute, Kansas v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1045 (10th Cir.1994); *United States v. Hooper*, 9 F.3d 257, 258 (2nd Cir.1993) (noting "more lenient interpretation" of excusable neglect in *Pioneer*); *Information Sys. and Networks Corp.*, 994 F.2d 792, 796 (Fed.Cir.1993).[6]

■ A final unresolved issue concerns whether the trial judge may take into account the fact that Attorney Kus "is among the bar's most conscientious in following ... rules and meeting deadlines" when he considers Robb's Rule 60(b)(1) motion on remand. Although the trial judge ultimately concluded that he had no discretion to grant Robb's motion, he noted that Robb's attorney was among "the best ... who practice in this court as far as meeting deadlines" and stated that this factor was "*something that should count in an exercise of discretion.*" The railroad argues to the contrary, but it has failed to cite any case law (nor are we aware of any) which specifically holds that a trial judge is barred from considering an attorney's track record when ruling on a 60(b)(1) motion premised on allegations of "excusable neglect." We often defer to the discretionary ruling of a trial judge, particularly in the domain of procedural matters, precisely because of his familiarity with (and closeness to) the litigation, including the parties and their attorneys. *See, e.g., Tabrizi v. Village of Glen Ellyn*, 883 F.2d 587, 592 (7th Cir. 1989) (decision whether to award Rule 11 sanctions is reviewed for an abuse of discretion because "the trial court ... has an intimate familiarity with the relevant proceedings and is in a ... superior position to

discern the motivations of the parties or counsel."); *Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir.1990) ("trial judge is particularly well-suited to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first hand the party's diligence or lack thereof."). Furthermore, we note that the Court in *Pioneer* did not set forth an *exclusive* list of equitable factors to guide trial judges in making "excusable neglect" determinations. In fact, the Court emphasized that trial judges should "tak[e] account of *all* relevant circumstances surrounding the party's omission" and specifically rejected an approach that would "narrow[ ] the range of factors to be considered." 507 U.S. at 395 n. 13, 113 S.Ct. at 1498 n. 13. We hold that so long as the trial judge does not treat Attorney Kus' overall record of compliance with court deadlines as a *dispositive* factor, he may consider this record as *one* of the facts and circumstances that has a bearing on whether the negligence of Robb's attorney constitutes "excusable neglect."

## IV. CONCLUSION

In closing, we wish to emphasize the limited character of our decision. Obviously, attorneys are always well-advised to comply with the filing deadlines and local rules established by a trial court, and nothing in our opinion should be construed as condoning the failure to do so, for legal professionals are expected "to exercise vigilance and caution in the performance of [their] responsibilities." *Redfield*, 818 F.2d at 615 (Coffey, J., dissenting). We do *not* hold that *all* late filings by counsel must henceforth be automatically considered "excusable neglect" for purposes of Rule 60(b)(1). *See United States v. Marbley*, 81 F.3d 51, 52 (7th Cir.1996) ("[N]ot every instance of neglect to file on time is excusable."). Such a broad decree would be at odds with the equitable and discretionary nature of the trial judge's "excusable neglect" determination, as reflected in the text

---

**6.** Two of these circuit court opinions presented facts similar to those in this case (i.e., attorneys who missed filing deadlines), and in each the court held that it was an abuse of discretion *not* to grant relief under Rule 60(b)(1), in light of *Pioneer. See Anchor Glass*, 71 F.3d at 849–50; *Information Systems*, 994 F.2d at 796.

of Rule 60(b)(1), which states that "[o]n motion and *upon such terms as are just*, the court *may* relieve a party or a party's legal representative from a final judgment, order, or proceeding" on the basis of excusable neglect. Fed.R.Civ.P. 60(b)(1). In light of *Pioneer*, trial judges are vested with discretion when determining whether an attorney's neglect in missing a deadline is "excusable" for purposes of Rule 60(b)(1). However, this discretion is not limitless, for it must be exercised after careful consideration of "all relevant circumstances surrounding the omission" *in a particular case*, including the equitable factors set forth in *Pioneer*. 507 U.S. at 395, 113 S.Ct. at 1498. We are confident that the district judges in this circuit will exercise this limited discretion, keeping in mind the standards expected of all attorneys as well as the importance of preserving the integrity of filing deadlines and court rules. The order denying Robb's Rule 60(b)(1) motion is vacated and

REMANDED.