**FARLEY INC., d/b/a Tool & Engineering and Magnus Metals, Debtor–Appellant,**

**v.**

**OHIO BUREAU OF WORKERS' COMPENSATION, Creditor–Appellee.**

No. 96 C 7597.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 15, 1997.

Mark K. Thomas, Amy A. Hijjawi, Katten, Muchin & Zavis, Chicago, IL, for appellant.

Rusty A. Payton, Katz, Randall & Weinberg, Chicago, IL, for appellee.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is an appeal from the United States Bankruptcy Court for the Northern District of Illinois, the Honorable Jack Schmetterer presiding. The Debtor, Farley, Inc., appeals the bankruptcy court's grant of the Creditor's, Ohio Bureau of Workers' Compensation, Motion to Enlarge Time Period for Filing Proof of Claim. For the following reasons, the court affirms the bankruptcy court's decision.

### I. BACKGROUND

On July 24, 1991, an involuntary petition was filed against Farley, Inc. ("Farley") under Chapter 7 of the Bankruptcy Code. On September 24, 1991, Farley consented to an entry of an order for relief and exercised its right under 11 U.S.C. § 706(a) to convert the Chapter 7 proceeding to a Chapter 11 proceeding.

Upon converting the proceeding, Farley filed a schedule of creditors holding unsecured, nonpriority claims ("Schedule F"). Included in Farley's Schedule F was Claim No. 508 ("Claim 508"), which listed the Bureau as holding an undisputed claim for workers' compensation premiums in the amount of $71,370. Absent from Farley's Schedule F was a list of former Farley employees who were injured during the period Farley operated as a self-insuring employer in Ohio and whose claims Farley continued to administer. Also on September 24, 1991, the bankruptcy court entered an order directing, inter alia, that all creditors must file their claims on or before November 15, 1991 (" the Bar Date"), and declaring that all creditors who failed to file claims on or before the Bar Date would not receive a distribution from Farley's estate.

On October 15, 1991, Farley mailed a copy of the bankruptcy court's order to the Ohio Bureau of Workers' Compensation's Bureau ("the Bureau"). Though the Bureau received the copy of the order in a timely fashion, it filed Claim 508 for $125,432.70, and Claim

No. 509 ("Claim 509") estimated at $12,000,000 on December 9, 1991, 24 days after the Bar Date.[1]

On March 26, 1992, the bankruptcy court entered an order directing Farley to "file and notice" any objections to claims by June 1, 1992. After receiving an extension of time to file its objections, Farley filed an omnibus objection on August 31, 1992. In the omnibus objection, Farley objected to certain claims, including Claim 509, on the grounds that the claims exceeded the amount that Farley's records reflected as owed. In a schedule accompanying the omnibus objection, Farley listed Claim 509 in the amount of $12,000,000 and commented "reconciliation process is continuing" and "no relief" requested. (R. 17 at 22).[2] By asterisk, Farley noted that its objection to Claim 509 was "filed solely as a protective measure due to 8/31/92 claims objection deadline." *Id.*

On November 30, 1992, the bankruptcy court confirmed Farley's Fourth Amended Plan of Reorganization. Almost two years later, on June 20, 1994, the bankruptcy court entered an order adjourning indefinitely Farley's objections to various claims, including Claim 509. On June 30, 1995, Farley filed an amended objection to the Bureau's claims 508 and 509. In the amended objection, Farley objected to Claim 509 on grounds that the Bureau failed to identify the basis for the claim or to attach adequate documentation to ascertain such a basis.

On September 18, 1995, and again on September 26, 1995, the Bureau amended Claim 509, each time without objection; in doing so,

the Bureau reduced Claim 509 to $9,335,119.03. Of that amount, approximately $3,500,000 was a liquidated claim for amounts the Bureau actually paid to former Farley employees from 1982 to 1990; approximately $5,800,000 represents the Bureau's actuarial projection of amounts it may have to pay to former Farley employees in the future.

After the Bureau amended Claim 509, Farley withdrew its amended objection; the bankruptcy court then gave Farley until November 29, 1995, to file a second amended objection. On November 29, 1995, the bankruptcy court entered a preliminary pretrial order setting a discovery schedule relative to Claim 509. Thereafter, Farley moved to vacate the pretrial order, asserting that the complexity of the claim would require an enormous amount of discovery, compilation, and review. In its motion to vacate, Farley also referred to discussions it allegedly had with the Bureau in which Farley asserted a possible time bar defense to Claim 509.

On May 30, 1996, Farley filed an answer to the Bureau's amendment of Claim 509 and a motion for summary judgment on Claim 509. Included in both its answer and its motion was Farley's assertion that Claim 509 was filed too late. In the Bureau's response, the Bureau claimed "excusable neglect" as the reason for its late filing.

On August 22, 1996, almost five years after the Bar Date, the Bureau moved for an extension of time to file its proof of Claim 509. On October 3, 1996, the bankruptcy court granted the Bureau's motion and deemed Claim 509 as timely filed.[3] In an

---

1. Whether Claim 509 should be deemed as timely filed is the basis for Farley's appeal. Claim 509 seeks reimbursement for (1) payments that the Bureau alleges it actually made to former Farley employees on account of workers' compensation claims already liquidated; (2) payments that the Bureau anticipates it may make in the future to former Farley employees on account of liquidated workers' compensation claims yet to be liquidated; and (3) payments the Bureau anticipates that it may make in the future to former Farley employees on account of anticipated workers' compensation claims that have not yet been asserted or filed. Claim 508 represents workers' compensation premiums that Farley owed to the Bureau pursuant to Ohio Revised Code § 4123.35. In February 1996, Farley

agreed to pay Claim 508 for approximately $105,000.

2. Citations to "R." refer to the each party's "Designation of the Contents of the Record on Appeal." Citations to "App. R." refer to the pleadings filed with this court on appeal.

3. After granting the Bureau's motion, the bankruptcy court granted Farley's motion for summary judgment on other grounds and thereby disallowed the Bureau's entire claim. *See In re Farley, Inc.*, 203 B.R. 681, 691 (Bankr.N.D.Ill. 1997). However, upon the Bureau's motion for reconsideration, the bankruptcy court recently vacated its grant of summary judgment for Farley. *See In re Farley, Inc.*, 211 B.R. 889, 891–92 (Bankr.N.D.Ill.1997).

oral ruling from the bench, the bankruptcy court concluded that the Bureau's late filing was the result of "excusable neglect." The bankruptcy court's grant of the Bureau's motion to extend time based on "excusable neglect" is the basis for this appeal.

## II. DISCUSSION

### A. "Excusable Neglect"

■ As a routine measure in a Chapter 11 proceeding, a bankruptcy court is to set a bar date for all creditors to file their proofs of claim. *See* Fed. R. Bankr.P. 3003(b)(1). After the bar date has passed, a creditor may move the bankruptcy court for an extension of time to file its proof of claim. *See* Fed. R. Bank. P. 9006(b)(1). Upon such motion, the bankruptcy court may in its discretion deem the claim as timely filed if the creditor's failure to file by the bar date was the result of "excusable neglect." *Id.* A creditor seeking to have its proof of claim deemed timely filed has the burden of proving "excusable neglect" by a fair preponderance of the evidence. *In re Dartmoor Homes,* 175 B.R. 659, 665 (Bankr.N.D.Ill.1994).

The leading authority on determining whether "excusable neglect" exists is *Pioneer Inv. Services v. Brunswick Assocs.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In that case, a Chapter 11 creditor asserted "excusable neglect" under Rule 9006(b)(1) as the reason for its attorney's inadvertent failure to file a proof of claim by the bar date. *Id.* at 385, 113 S.Ct. at 1493. The Court concluded that the rationale behind Rule 9006(b)(1) was to permit courts "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388, 113 S.Ct. at 1495. Moreover, the Court reasoned that a "flexible understanding" of the term was necessary to satisfy the policies underlying Chapter 11 and the bankruptcy rules. *Id.* at 389, 113 S.Ct. at 1495. Thus, the Court held that the creditor's failure to file on time was within the meaning of "excusable neglect."

■ The *Pioneer* Court also set forth the proper analysis that a bankruptcy court should undertake when deciding whether a finding of "excusable neglect" is appropriate. The inquiry is an equitable one, "taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498. Most notably, courts should consider four factors in its overall equitable inquiry: "1) the danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith." *Id.* Hence, the court will review the bankruptcy court's decision to determine whether its finding of "excusable neglect" was in accord with the analysis that the Court suggested in *Pioneer.*

The district court reviews a bankruptcy court's factual findings for clear error and its conclusions of law *de novo. In re Chappell,* 984 F.2d 775, 779 (7th Cir.1993). However, appellate review of a bankruptcy court's conclusion of "excusable neglect" is deferential, and thus reviewed for abuse of discretion. *Matter of Singson,* 41 F.3d 316, 320 (7th Cir.1994). An abuse of discretion will be found "only if no reasonable person could agree with the [ruling]." *Tobel v. City of Hammond,* 94 F.3d 360, 362 (7th Cir.1996) (citations omitted).

Farley argues that the bankruptcy court committed legal error by placing the burden on Farley to show the absence of "excusable neglect." Because of this alleged error, Farley asks this court to remand the case with the proper burden instructions, regardless of our review of whether a finding of "excusable neglect" was appropriate. In support of its argument, Farley refers to two passages in the record where the bankruptcy court remarked that Farley has not demonstrated impact on the proceedings or prejudice. (R. 13 at 10–11). However, the court declines Farley's invitation to remand because the record does not compel the court to do so.

A review of the record reveals that the bankruptcy court applied the appropriate legal analysis in finding "excusable neglect." The bankruptcy court considered all relevant circumstances, including the *Pioneer* factors. (R. 13 at 9–14). As discussed below, the record reveals that the bankruptcy court re-

viewed the parties' pleadings with respect to the Bureau's motion and exercised its equitable powers accordingly. The bankruptcy court's allegedly errant remarks do not persuade us to disturb its overall finding and find that the Bureau failed to meet its burden.

### 1. *The Pioneer Factors*

Having decided that the bankruptcy court employed the correct legal analysis, the court turns to whether the bankruptcy court abused its discretion in finding "excusable neglect." In doing so, the court will examine whether the bankruptcy court correctly applied the four *Pioneer* factors.

### i. *Lack of Prejudice*

■ With respect to the first factor, the bankruptcy court found that there had been no specific prejudice to Farley from the Bureau's filing of Claim 509 24 days after the Bar Date. *Id.* at 10. The bankruptcy court explained that the relevant focus for a finding of prejudice was on the time period between the Bar Date and the late filing date, not the period from the filing date to the filing of the motion to extend time. *Id.* at 12–13. Thus, the bankruptcy court rejected Farley's attempt to claim prejudice based upon the Bureau's partial liquidation of Claim 509 since the Bar Date. *Id.* at 13–14.[4] The bankruptcy court stated that Farley was confusing "a prejudice with a consequence [from the filing of the late claim]." *Id.* at 14.

In support of its finding of no prejudice, the bankruptcy court also referred to Farley's failure to press its objection to Claim 509 during the five years in which its Chapter 11 proceeding, including Claim 509, was pending. (R. 13 at 9–10). Specifically, the bankruptcy court cited its grant of leave to the Bureau to amend Claim 509 on at least two occasions. Each time, nothing "forestall[ed] Farley from objecting to the original lateness of the original claim." (R. 13 at 9).

In its brief, Farley disputes the bankruptcy court's finding that it did not object. As evidence of its objection to Claim 509, Farley

refers to the omnibus objection it filed on August 31, 1992. A review of the supplemental record indicates that Farley is correct when it asserts that an objection to Claim 509 was included in the omnibus objection. (R. 17). Listed among the hundreds of claims is Claim 509 in the amount of $12,000,-000. *Id.* at 22. Notably, however, Farley does not assert the time bar as a defense in the comment section relative to Claim 509. Rather, Farley merely stated "[r]econciliation process is continuing." *Id.* Also, in the column titled "Relief Requested," Farley stated "None," with an asterisk referring to the remark "[o]bjection filed solely as protective measure due to 8/31/92 claims objection deadline." *Id.*

After its omnibus objection, and almost three years after its Fourth Amended Plan of Reorganization was approved, Farley filed another objection to Claim 509 in June 1995. (R. 20). Again, Farley did not raise the time bar as grounds for its objection. Instead, it objected to Claim 509 solely on the grounds that the claim "fails to identify the basis of the purported claim or to attach any documents which the basis for the claim can be ascertained." (R. 20 at 1).

It was not until November 1995, after the Bureau had twice amended Claim 509, that Farley referred to the time bar as a defense in its motion to vacate the bankruptcy court's pretrial order. (R. 21 at 3). Even then, Farley failed to zealously assert its objection to Claim 509 on time bar grounds. Farley's reference to a possible time bar defense is buried on page three in paragraph eight of its motion, and mentioned only in passing.

Apparently, Farley began to contemplate the time bar defense only when its special counsel assumed responsibility for prosecuting Farley's objections to the Bureau's claims in June 1995. (R. 21 at 1–3). Notably, Farley admits that "[d]uring the course of investigating claim number 509, special counsel for Farley reviewed Farley's previously raised objections, and developed additional grounds for objection." (R. 21 at 2). This

---

4. A review of events since the Bar Date shows that the Bureau actually reduced its claim by

approximately $2,700,000.

statement evidences that Farley discovered the time bar defense in the late stages of the litigation. It also discredits Farley's claim that it has objected to Claim 509 on timeliness grounds since the early stages of its bankruptcy proceeding. In fact, the record indicates that Farley did not formally object to Claim 509 on timeliness grounds until May 1996.

It is clear that throughout this litigation Farley knew that the Bureau held a substantial claim against it for an amount well beyond Claim 508. If Farley was somehow not aware of the Bureau's substantial workers' compensation claim at the time of its conversion to a Chapter 11 proceeding in September 1991, the Bureau's filing in December 1991 certainly put it on notice. *Cf. In re S.N.A. Nut Company*, 198 B.R. 541, 544 (Bankr.N.D.Ill.1996) (creditor's pre-petition correspondence put debtor on notice of potential claim). The Bureau's filing, of course, was well before the confirmation of Farley's Fourth Amended Plan of Reorganization in November 1992. For Farley to argue now that granting the Bureau's motion to extend time would disrupt its reorganization is simply putting form over substance. *See Matter of Stavriotis*, 977 F.2d 1202, 1205 (7th Cir. 1992) ("a bankruptcy court will act to assure that 'fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done' [citation omitted]"). Moreover, any harm that Farley would allegedly suffer by allowing Claim 509 to be filed is "not the result of [the Bureau's] failure to file, but of the claim itself." *In re Dartmoor Homes, Inc.*, 175 B.R. 659, 666 (Bankr. N.D.Ill.1994).

■ Nevertheless, the court does not condone the Bureau's negligence in filing Claim 509 three weeks past the Bar Date and inexplicably waiting to file its motion. However, the Bureau's late filing did not excuse Farley's own negligence in not properly objecting to Claim 509. In fact, Farley repeatedly acknowledged Claim 509 throughout this bankruptcy litigation and was lax in asserting a time bar defense. "[W]hen both the debtor and creditor are guilty of significant negligence in the handling of a claim and the

debtor is aware of a creditor's claim, then ... 'a tie goes to the [creditor].' " *In re Dartmoor Homes*, 175 B.R. 659, 668 (Bankr. N.D.Ill.1994). That reasoning is equally applicable here and is consistent with Chapter 11's aim of avoiding forfeitures by creditors. *See Pioneer*, 507 U.S. at 389, 113 S.Ct. at 1495. As such, the factual findings of the bankruptcy court on the issue of lack of prejudice were not clearly erroneous.

ii. *Length of the Delay and Its Potential Impact on Judicial Proceedings*

■ After finding no prejudice to Farley, the bankruptcy court addressed the second *Pioneer* factor: the length of the delay and its potential impact on judicial proceedings. The bankruptcy court found that Farley did not demonstrate "any potential impact or actual impact or impact at any time" resulting from the Bureau's delay of 24 days. (R. 13 at 10–11). In fact, the bankruptcy court intentionally pushed the litigation at a "very slow pace" (after Claim 509 was filed) to allow Farley and the Bureau to resolve their differences. *Id.* at 11. On appeal, Farley does not claim any negative impact during that relatively short period; rather, it focuses only on the prejudice it allegedly will suffer if Claim 509 stands. As discussed above, even if the focus was on events subsequent to the filing of Claim 509, Farley's repeated acknowledgment of Claim 509, before and after the confirmation of the Plan of Reorganization, supports the bankruptcy court's finding of no negative impact.

iii. *The Reason for the Delay*

■ With respect to the third factor, the bankruptcy court admonished the Bureau for not catching the Bar Date on time, yet accepted the bureaucratic reason for the delay. (R. 13 at 11). In its brief, Farley correctly asserts that the Bureau has admitted its negligence in not filing Claim 509 on time. However, a showing of fault on the part of the Bureau does not defeat a finding of "excusable neglect." *Pioneer*, 507 U.S. at 388, 113 S.Ct. at 1494. Indeed, "excusable neglect" encompasses "situations in which the failure to comply with a filing deadline is

attributable to negligence." *Id.* at 394, 113 S.Ct. at 1497.

### iv. *Good Faith*

■ Contrary to Farley's assertion, the bankruptcy court did address the fourth *Pioneer* factor: whether the creditor acted in good faith. The bankruptcy court's statement that the record lacked any indication that "high level persons [at the Bureau] knew about the deadline" implies such a finding. Nonetheless, Farley demands a finding of bad faith by alleging that the Bureau intentionally waited to file Claim 509. By not filing by the Bar Date, Farley asserts, the Bureau was allowed to partially liquidate Claim 509. Again, Farley incorrectly focuses on the time period from the Bar Date until the Bureau's filing of its motion to extend time, rather than on the delay of 24 days from the Bar Date to the Bureau's initial filing of Claim 509 in December 1991. As such, Farley's argument is not persuasive. Though the Bureau was certainly guilty of poor judgment in filing Claim 509 late, nothing in the record suggests that the Bureau acted in anything but good faith. *See Dartmoor Homes,* 175 B.R. at 669 (serious errors in judgment are insufficient to conclude bad faith).

■ Inherent in a finding of "excusable neglect" is a historical review of events from the Bar Date to the filing of the late claim. As the record indicates, the bankruptcy court made this review in accord with *Pioneer* and found no injury to Farley resulting from the Bureau's approximately three week delay in filing. The bankruptcy court also exercised its equitable powers and considered all relevant circumstances (including Farley's failure to object to Claim 509). *See In re Confidential Investigative Consultants, Inc.,* 178 B.R. 739, 751 (Bankr.N.D.Ill.1995) (emphasizing that the *Pioneer* factors are not the exclusive inquiry in determining "excusable neglect").

### 2. *Abuse of Discretion*

■ This court, upon review of a bankruptcy court's decision, "will afford great def-

erence to the bankruptcy court's exercise of its equitable powers over the debtor's estate and the related matters over which the bankruptcy court enjoys dominion and command." *In re Pettibone Corp.,* 163 B.R. 989, 997 (N.D.Ill.1994), *aff'd,* 40 F.3d 175 (7th Cir. 1994).

Based on the record, it cannot be said that the bankruptcy court abused its discretion in finding "excusable neglect." The bankruptcy court's finding of "excusable neglect" is consistent with recent Seventh Circuit case law. *See Robb v. Norfolk & Western Railway Co.,* 122 F.3d 354, 360–62 (7th Cir.1997). In *Robb,* the Seventh Circuit emphasized that courts in this circuit must follow *Pioneer's* directive to construe "excusable neglect" liberally. *Id.*[5] The court recognized that this instruction departs from pre-*Pioneer* case law in this circuit, when the Seventh Circuit was one of several circuits that construed the term narrowly. *Id.* at 358–59 (*citing In re Danielson,* 981 F.2d 296 (7th Cir.1992)). To underscore the impact of *Pioneer,* the court in *Robb* went so far as to disapprove any of its precedents, including those post-*Pioneer,* that are inconsistent with a liberal understanding of "excusable neglect." *Id.* at 360–62. Accordingly, Farley's reliance on *Danielson* and *Matter of Plunkett,* 82 F.3d 738 (7th Cir.1996), two cases which follow a narrow view of "excusable neglect," is not persuasive.

The *Robb* court stated that a "court has discretion to consider the equities and then determine whether a missed filing deadline is attributable to ... 'excusable neglect.'" *Id.* at 359. In this case, the record indicates that based on that consideration, the bankruptcy court made a finding of "excusable neglect" that was consistent with contemporary Seventh Circuit law.

### B. Section 502

Having held that the bankruptcy court did not abuse its discretion in finding "excusable neglect," the court's review is complete. Nonetheless, in its reply brief, Farley argues for the first time on appeal that had the

---

5. Though *Robb,* like *Pioneer,* involved attorney negligence as grounds for a finding of "excusable neglect," its instruction to construe the term liberally is applicable to other factual situations as well, including the one at bar.

Bureau filed Claim 509 by the Bar Date, it would have been disallowed under § 502(e)(1)(B) of the Bankruptcy Code.[6]

The court declines to address whether § 502(e)(1)(B) is applicable because it is not the subject of this appeal. "[W]hen a proof of claim may be filed and whether a proof of claim will be deemed allowed are two distinct issues governed by separate provisions of the Code." *In re Johnson,* 156 B.R. 557, 558 (Bankr.N.D.Ill.1993). Indeed, when Farley was before the bankruptcy court, it argued § 502(e)(1)(B)'s applicability and the issue of timeliness as separate issues in its motion for summary judgment. Furthermore, any mention of § 502(e)(1)(B) is absent in Farley's response to the Bureau's motion to enlarge time. Accordingly, the bankruptcy court did not address § 502(e)(1)(B) while granting the Bureau's motion. Moreover, the transcript of the bankruptcy court's ruling does not indicate that Farley asserted that § 502(e)(1)(B) was related to the issue of timeliness. Therefore, the court finds that a review of whether § 502(e)(1)(B) applies is not appropriate at this time. As Farley itself concedes, "the only issue before the Court is whether the Bureau has established excusable neglect in light of its failure to timely file its claim pursuant to Code § 501 and Rule 3003(c)...." (App. R. 11, p. 4, n. 7).

### III. CONCLUSION

The bankruptcy court did not abuse its discretion in finding excusable neglect as the reason for the Bureau's tardy filing of Claim 509. In accord with *Pioneer,* the bankruptcy court considered all relevant circumstances and properly exercised its equitable powers. The district court cannot find that no reasonable person could agree with the ruling of the bankruptcy court. Thus, the district court affirms the bankruptcy court's decision to grant the Bureau's motion to extend time.

IT IS SO ORDERED.

---

6. *Section 502(e)(1)(B) requires that a proof of claim be disallowed if: (1) the claim is for reimbursement or contribution; (2) the entity asserting the claim is liable with the debtor on the* claim of the creditor; and (3) the claim is contingent at the time of its allowance or disallowance. 11 U.S.C. § 502(e)(1)(B).