## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 12-3239

IN THE MATTER OF:

CANOPY FINANCIAL, INC.,

*Debtor.*

APPEAL OF:

BUDDHA ENTERTAINMENT, LLC

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 12 C 5059—**Suzanne B. Conlon**, *Judge.*

ARGUED FEBRUARY 11, 2013—DECIDED FEBRUARY 28, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge.* Canopy Financial developed and marketed software for banks and health-care payers to handle health-related savings and spending accounts. It also administered the health-care funds of almost 2,000 entities. When Canopy entered bankruptcy in 2009, it became clear that Anthony Banas and Jeremy Blackburn had misappropriated more than $90 million from both Canopy's investors and the customers that

had placed money under its management. Banas and Blackburn pleaded guilty to fraud, and each was sentenced to more than a decade's imprisonment. Blackburn committed suicide the day before he was to report; Banas is in prison.

Gus Paloian, the Trustee for the benefit of Canopy's creditors, has recovered about $50 million by seizing assets such as two 2010 Range Rover SUVs, a 2009 Bentley, a 2008 Lamborghini, a 2010 Lamborghini, a 2009 Rolls Royce Phantom, a 2009 Aston Martin DBS, a 2009 Bentley Continental, and a 2009 Ferrari 430, all of which Blackburn had in the garage of his mansion (which itself had been purchased with Canopy's money). Paloian is trying to recover more by clawing it back from recipients of fraudulent conveyances—that is, transfers made while Canopy was insolvent, and not in exchange for reasonably equivalent value. See 11 U.S.C. §§ 544(b), 548, 550, and Illinois's version of the Uniform Fraudulent Transfer Act, 740 ILCS 160/1 to 160/12.

Buddha Entertainment is among the businesses in Paloian's sights. Buddha operates nightclubs, including TAO in Las Vegas's Venetian Hotel and Casino. According to the Trustee's complaint, Banas and Blackburn spent more than $80,000 of Canopy's money at TAO during several visits. The complaint maintains that Canopy received no value in exchange.

Buddha has a registered agent for service of process. In October 2011 the Trustee served the complaint and summons on that agent, located in Carson City, Nevada. Buddha did not answer. In December 2011 the Trustee

filed a motion for default; that motion, too, though sent to Buddha's agent, did not lead to a response. Bankruptcy Judge Wedoff declared Buddha to be in default and entered a judgment requiring it to disgorge the amounts it had received from Canopy. That judgment was sent to Buddha's registered agent.

When Buddha neither paid nor appealed, the Trustee began to collect from its assets in Nevada. That at last provoked a response. Buddha filed a motion under Fed. R. Bankr. P. 9024, which with three irrelevant provisos incorporates Fed. R. Civ. P. 60(b). The motion asked the bankruptcy judge to vacate the default under Rule 60(b)(1), which permits relief from a judgment that depends on "mistake, inadvertence, surprise, or excusable neglect". Counsel asserted that Buddha had not received any of the Trustee's filings and that failure to respond was therefore "excusable neglect." The bankruptcy judge denied the motion, stating among other things that a litigant is "responsible for the acts of [its] registered agent." A district judge affirmed. 2012 U.S. Dist. LEXIS 126884 (N.D. Ill. Aug. 31, 2012).

Buddha's principal argument on appeal is that the bankruptcy judge made a legal error when stating: "the Seventh Circuit has said that once a default judgment is entered, good cause is not shown by the allegation that a registered agent failed to submit the pleadings to the defendant." And Buddha is right that the seventh circuit has never said this, though courts *within* the circuit (bankruptcy and district judges) have so held. Imprecise phrasing is common in oral statements of

reasons, such as the bankruptcy judge's. This court would not like to be bound by judges' statements at oral argument, as opposed to our written opinions.

Buddha finds comfort in the holding of *Robb v. Norfolk & Western Ry.*, 122 F.3d 354 (7th Cir. 1997), that, in principle, an attorney's negligence in meeting a filing deadline could be "excusable neglect" for the purpose of Rule 60(b)(1). What is true for lawyers must be true for other agents, Buddha maintains. Perhaps the bankruptcy judge would have agreed, had Buddha brought *Robb* to his attention. But it did not. It is hard to fault the judge for failing to find the decision on his own. The bankruptcy judge thought it dispositive that an agent's acts and omissions usually are attributed to the principal. That's a precept of unquestionable validity. See, e.g., *United States v. 7108 West Grand Avenue*, 15 F.3d 632 (7th Cir. 1994).

*Robb* was based on *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993), which held that an attorney's inadvertent failure to file a proof of claim could be "excusable neglect" within the meaning of Fed. R. Bankr. P. 9006(b)(1). The Supreme Court held that a trial judge has discretion to excuse some kinds of negligent errors while finding others inexcusable, which implies that appellate review is deferential. Buddha wants us to hold that the bankruptcy judge abused his discretion in finding its agent's errors not excusable. Yet we do not know the circumstances of those errors—indeed, we do not know that the agent erred. The fault may lie entirely with Buddha. *Pioneer*

*Investment Services* describes excusable neglect as an "equitable" standard that requires the court to take "account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395. Without knowing those circumstances, a court cannot apply the standard.

The affidavits filed in bankruptcy court were phrased oddly. Although Buddha's brief describes them as saying that the business never received notice of the proceeding, what the affidavits actually say is that two particular managers do not have an "independent recollection" of receiving the complaint and summons; the affidavits are silent about the motion for default. For all we know, then, Buddha received (and the managers recall receiving) the motion for default—yet Buddha did nothing. Such a neglect could not be excused.

The affidavits' use of "recollection" is not the only curious matter. The most telling thing about this record is its thinness. Neither in the bankruptcy court, nor later, did Buddha provide evidence from the agent it hired to accept service. At least eight things might have happened to the complaint and other documents: (a) they never reached the agent; (b) they reached the agent but were not forwarded to Buddha; (c) the agent sent them to Buddha but they were lost in transit; (d) the documents reached Buddha but were not routed to the people supposed to receive them; (e) the documents reached the designated people at Buddha, but not the persons who filed affidavits; (f) the documents reached the affiants, who did nothing and forgot about them; (g) the documents reached the affiants, who did nothing

and are not telling the truth about their memory. Whether the neglect is "excusable" depends on which of these things happened. Let's put (g) aside—the affidavits must be accepted at face value in the absence of a hearing—and think about the others. And let us bypass the improbability that multiple deliveries all would go awry. (Buddha concedes that the Trustee sent the papers to the agent's correct address.)

a. If vital documents did not reach the agent, then Buddha's inaction is "excusable" and it is entitled to relief. An affidavit from the agent could reveal whether it received the documents; businesses that specialize in receiving and transmitting legal process keep careful records of incoming and outgoing documents. Yet Buddha chose not to present any evidence about whether the agent received these documents.

b. If the agent received the documents but did not send them on, whether the neglect was excusable would depend at least in part on whether Buddha contracted and paid for a competent service. If it was trying to get by on the cheap, it must bear the consequences. Since we have no evidence from either the agent or Buddha about what kind of service Buddha signed up for—let alone whether the agent relayed whatever documents it received—it is impossible to resolve these questions in Buddha's favor.

c. If documents were misaddressed by the agent, or properly addressed but lost in transit between the agent and Buddha, whether the neglect is excusable could depend on what kind of service the agent promised

to provide. Did Buddha require the agent to use a service with a tracking number, so that non-delivery could be detected and a replacement copy sent? If Buddha paid the agent only to send documents by ordinary mail, and not to use a trackable shipment (or electronic delivery to an email account or web site of its lawyers), it must accept responsibility. Amazon uses trackable shipments for $10 movies; businesses such as Buddha cannot do less in litigation and expect delivery errors to be deemed "excusable neglect."

d. Suppose the documents reached Buddha's mailroom and were misrouted, despite Buddha's use of ordinary care in handling legal papers. That might establish excusable neglect, see *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630–31 (7th Cir. 2009) (applying Fed. R. Civ. P. 55(c))—but Buddha has never tried to show that this is what happened. For all we know, here, as in *CFTC v. Lake Shore Asset Management Ltd.*, 646 F.3d 401, 406–07 (7th Cir. 2011), the litigant failed to tell the agent who within its administrative office should receive the papers, or supplied the agent with an incorrect name. In *Lake Shore* we held that a bank that failed to notify a receiver of the name of the person who needed legal papers, causing responsible managers not to see them in time, could not use Rule 60(b)(1) to get another chance.

e. If the documents came to the designated recipients, who filed them away without action, and then someone else supplied the affidavits, it would be easy to understand why the affiants did not recall seeing the complaint—but the affiants' failure to receive the documents would not excuse Buddha's failure to respond.

f. Finally, if the affiants themselves received the documents and quickly sent them to the file room, retaining no memory of the event—perhaps thinking an $80,000 dispute not worth the expense of hiring counsel—again Buddha must accept the consequences.

Whenever the judiciary adopts an "all the facts and circumstances" approach, as *Pioneer Investment Services* did, litigants need to supply those details. Buddha, as the movant trying to upset a final judgment, had the burdens of both production and persuasion. It did not produce essential evidence and therefore could not hope to carry its burden of persuasion. The judgment of the district court is

AFFIRMED.