In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 15-1097

KYLER MOJE,

*Plaintiff-Appellee,*

*v.*

FEDERAL HOCKEY LEAGUE, LLC,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 500 — **Sara L. Ellis**, *Judge.*

_____

ARGUED MAY 29, 2015 — DECIDED JULY 7, 2015

_____

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* As in *Choice Hotels International, Inc. v. Grover*, No. 14-3294, also decided today, the defendant's lawyer failed to file essential documents, leading to the entry of a default judgment, and the defendant wants another shot at litigation.

Kyler Moje, playing for the Danville Dashers of the Federal Hockey League, one of the minor leagues in professional

hockey, lost an eye to high-sticking during a game against the Akwesasne Warriors. He sued Oakley, Inc., which made the visor that Moje blames for offering inadequate protection, and the League itself. Instead of notifying its liability insurer and letting it defend the tort suit, the League hired John A. LoFaro, of Syracuse, New York. LoFaro promised to represent the League's interests but did not do so.

The League learned about potential trouble a month after the suit began, when Oakley's attorney called Dan Kirnan, the League's President, to ask why it had not filed an answer to the complaint. Kirnan asked LoFaro what was up, and LoFaro said that an answer had been filed. He sent the League a purported copy. The court's docket did not reflect any filing, however, and Moje asked the judge to enter a default. LoFaro did not respond—nor did he do anything after the district court entered the default and permitted Moje to prove up his damages. On June 11, 2014, four months after the suit began, the district court entered a final judgment of $800,000 against the League. Kirnan maintains that he first learned about this in October 2014, after Moje commenced collection proceedings. At last Kirnan notified the League's insurer, which undertook to defend under a reservation of rights (the League's delay in notification, and the entry of a final judgment, had an obvious potential to prejudice the insurer). In December 2014 a lawyer hired by the insurer entered an appearance for the League and filed a motion under Fed. R. Civ. P. 60(b)(1) to set aside the judgment. The district court's denial of that motion led to this appeal.

As in *Choice Hotels*, a lawyer failed to mount a defense of the suit, a default judgment was entered, and the district court denied a Rule 60(b) motion. In *Choice Hotels* the motion

was filed more than a year after judgment and so depended on Rule 60(b)(6), the catchall section, which limits relief to extraordinary circumstances. In this case, by contrast, the motion was filed only six months after judgment and so could invoke Rule 60(b)(1), which allows relief on account of "mistake, inadvertence, surprise, or excusable neglect". The League maintains that "excusable neglect" led to the default judgment. The district court saw "neglect" but did not think it "excusable." LoFaro has never offered an explanation for the combination of inaction and deceit. (To be more precise, LoFaro has never been called on to explain his conduct. We are reporting the League's allegations, but LoFaro may not agree with its description. As far as we can tell the League has not filed a complaint with the legal-ethics panel in New York—but LoFaro is not in good standing anyway, as he has failed to pay his dues.)

The League wants us to bypass the question whether Lo-Faro's conduct is excusable and concentrate on its own knowledge and conduct. Yet the Supreme Court held in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 396–97 (1993), the leading decision on the meaning of "excusable neglect" in federal procedure, that a lawyer's errors are imputed to the client for the purpose of this phrase. To obtain relief, the Court held, a litigant must show that both its own conduct and its lawyer's fit the category of "excusable" neglect.

Usually this concentrates attention on counsel, for most errors will be chalked up to counsel alone. There is one potentially important exception to this norm, however. As the Supreme Court discussed in *Maples v. Thomas*, 132 S. Ct. 912, 922–23 (2012), and we repeated in *Choice Hotels*, a lawyer's

abandonment of the client ends the agency relation. Abandonment leaves the client responsible for its own conduct, but not for the lawyer's—and then the question becomes whether the litigant's conduct constituted excusable neglect.

To simplify matters we shall assume that LoFaro promised to represent the League yet abandoned his client. That leaves the question whether the League has shown its own excusable neglect. *Pioneer* gives an expansive definition to "neglect," a word that it held to include negligence, see 507 U.S. at 387–95. With respect to "excusable," the Court wrote:

> the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include … the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id*. at 395 (footnote omitted). The open-ended nature of these factors means that appellate review is deferential. *In re Canopy Financial, Inc.*, 708 F.3d 934, 936 (7th Cir. 2013); *Milwaukee Branch of the N.A.A.C.P. v. Thompson*, 116 F.3d 1194, 1197 (7th Cir. 1997).

The thin record that the League built in the district court does not compel a ruling in its favor. Two things dominate: first, the League failed to tender the defense of Moje's suit to its insurer when it received the complaint; second, the League failed to act prudently after being alerted by Oakley that there was a problem.

Instead of turning to its insurer, which any sensible business should have done, it hired LoFaro. Why? The only reason the League has given is that he had provided satisfacto-

ry legal services to Kirnan (and perhaps the League) in earlier years. But what kind of legal services? LoFaro's web site describes his practice as "Personal Injury ~ Criminal Law DWI, Speeding, and all Traffic Related Matters". See http://lofarolaw.com. That list of specialties does not imply aptitude for the defense of a million-dollar tort suit in Chicago. LoFaro practices in Syracuse, New York, and is not admitted to the bar of the Northern District of Illinois.

Even if he were a wizard of tort defense, why keep the insurer in the dark? The League has never offered a reason. After a co-defendant told the League that no answer had been filed on its behalf, it did not take precautions such as notifying the insurer, engaging counsel in Chicago, or checking the district court's docket (which can be done from any desktop computer). A check of the docket would have revealed that LoFaro did not file an appearance as the League's attorney and did nothing to protect its interests. Because LoFaro had not filed an appearance, Moje's lawyer would have sent all filings, such as the request for a default judgment and his proof of damages, directly to the League, which sat on its hands. The League cannot escape a substantial share of the responsibility for the outcome.

Abandoned clients who take reasonable steps to protect themselves can expect to have judgments reopened under Rule 60(b)(1), but the League is not in that category. Its remedy, if any, is against LoFaro. If he has inadequate (or no) malpractice insurance, and cannot satisfy a malpractice judgment, that too reflects the League's choice; it could have insisted on proof of adequate coverage. It would be inappropriate to send Moje, who bears no responsibility, back to square one of his tort suit.

AFFIRMED